No. 15-1293

# United States Court Of Appeals For The Tenth Circuit

_____

**GENERAL STEEL DOMESTIC SALES, LLC, d/b/a GENERAL STEEL CORPORATION, a Colorado limited liability company,**

*Plaintiff-Appellee,*

v.

**ETHAN DANIEL CHUMLEY, individually; and ATLANTIC BUILDING SYSTEMS, LLC, a Delaware corporation, d/b/a ARMSTRONG STEEL CORPORATION,**

*Defendants-Appellants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO,
CASE NO. 14-cv-01932-REB-CBS
THE HONORABLE JUDGE ROBERT E. BLACKBURN

_____

**APPELLANTS' OPENING BRIEF**

**(ORAL ARGUMENT IS REQUESTED)**

_____

David S. Gingras
Gingras Law Office, PLLC
4802 E. Ray Road, #23-271
Phoenix, AZ 85044
Telephone:  480.264.1400
Facsimile:  480.248.3196
Email:      david@gingraslaw.com

Craig R. May
Kenneth E. Stalzer
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone:  303.244.1800
Facsimile:  303.244.1879
Email: may@wtotrial.com
           stalzer@wtotrial.com

*Attorneys for Defendants-Appellants,*
*Ethan Daniel Chumley and Atlantic Building Systems, LLC*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure P. 26.1, Defendant-Appellant Atlantic Building Systems, LLC states it has no parent corporation, and no publicly-held corporation owns ten percent (10%) or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES .................................................................... iv

STATEMENT OF PRIOR OR RELATED APPEALS.................................................1

STATEMENT OF JURISDICTION..............................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ..................................1

STATEMENT OF THE CASE................................................................2

STATEMENT OF FACTS ....................................................................4

    A.    General Background....................................................................4

    B.    The Advertising at Issue In This Case ..................................5

    C.    Plaintiff's Claims....................................................................12

    D.    Proceedings in the District Court .....................................14

SUMMARY OF ARGUMENT ...............................................................16

STANDARD OF REVIEW ..................................................................20

ARGUMENT ..............................................................................20

I.    THE CDA BARS PLAINTIFF'S CLAIMS....................................20

    A.    The Plain Language of 47 U.S.C. § 230(c)(1) Bars Plaintiff's Claims....................................................................21

        1.    Defendants Are Providers and Users of an Interactive Computer Service.................................................21

        2.    Plaintiff's Claims Treat Defendants as Publishers/Speakers of Information............................22

        3.    The Allegedly Actionable Content in the IRLM Posts Was Created by Another Information Content Provider, Not Defendants ........................................................23

B. The District Court Erred By Finding That Defendants "Developed" the IRLM Posts..............................................................26

    1. The District Court Applied the Wrong Definition of Development .................................................................................28

    2. Based on the Erroneous Understanding of *Accusearch*, the District Court Created a Standard That Is Contrary to Law........................................................................................32

    3. Quoting "Excerpts" of Existing Third-Party Pages Is Not Development, Regardless of Whether the Snippet Fairly and Accurately Reflects All Content at the Source .................33

    4. The District Court's Definition of "Development" Would Eviscerate the "Robust" Immunity Congress Intended to Create .....................................................................................40

C. Plaintiff Cannot Prevail Even Under Its Own Theory .......................45

II. THE CDA APPLIES TO FALSE ADVERTISING CLAIMS ....................49

III. THIS COURT HAS JURISDICTION TO HEAR THE APPEAL ...............52

A. The Order Denying CDA Immunity Resolved an Important Issue Separate From the Merits.........................................................52

B. The Order Denying CDA Immunity is Effectively Unreviewable on Appeal After Final Judgment..................................55

CONCLUSION.................................................................................................58

STATEMENT REGARDING ORAL ARGUMENT ...........................................60

CERTIFICATE OF COMPLIANCE....................................................................61

CERTIFICATE OF DIGITAL SUBMISSION ......................................................62

iii

# TABLE OF AUTHORITIES

## CASES

*Arbogast v. Kan. Dep't of Labor*,
789 F.3d 1174 (10th Cir. 2015)..............................................................52

*Barnes v. Yahoo!*,
570 F.3d 1096 (9th Cir. 2009)...................................................... 23, 27, 33, 35

*Barrett v. Rosenthal*,
146 P.3d 510 (Cal. 2006)........................................................................24

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003).............................................. 17, 18, 22, 27, 46, 54

*Ben Ezra, Weinstein, & Co. v. Am.Online Inc.*,
206 F.3d 980 (10th Cir. 2000)........................................................... passim

*Black v. Google*, Inc.,
2010 WL 3222147 (N.D. Cal. Aug. 13, 2010),
aff'd, 457 F. App'x. 622 (9th Cir. 2011).................................................. 39, 50

*Bonnet v. Harvest (U.S.) Holdings, Inc.*,
741 F.3d 1155 (10th Cir. 2014)...............................................................56

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003)........................................................ 17, 33, 36, 56

*DC Comics v. Pac. Pictures Corp.*,
706 F.3d 1009 (9th Cir. 2013)..................................................................54

*Directory Assistants, Inc. v. Supermedia, LLC*,
884 F. Supp. 2d 446 (E.D. Va. 2012)................................................... 23, 26, 50

*Doe v. Friendfinder Network, Inc.*,
540 F. Supp. 2d 288 (D.N.H. 2008).........................................................37

*Eaton v. Meneley*,
379 F.3d 949 (10th Cir. 2004)................................................................20

*Estate of Kennedy v. Bell Helicopter Textron, Inc.*,
283 F.3d 1107 (9th Cir. 2002)................................................................57

*F.T.C. v. Accusearch*,
    570 F.3d 1187 (10th Cir. 2009) ................................................................... passim

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) (en banc) ........................................... 17, 36, 39, 46

*Farmer v. Perrill*,
    275 F.3d 958 (10th Cir. 2001) ................................................................. 53, 57, 58

*Fisher Sand & Gravel Co. v. Giron*,
    465 F. App'x 774 (10th Cir. 2012) ........................................................................54

*Fogarty v. Gallegos*,
    523 F.3d 1147 (10th Cir. 2008) ...........................................................................54

*Gavra v. Google, Inc.*,
    2013 WL 3788241 (N.D. Cal. July 17, 2013) ......................................................38

*Getachew v. Google, Inc.*,
    491 F. App'x 923 (10th Cir. 2012) ......................................................... 20, 33, 38

*Goddard v. Google, Inc.*,
    2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) .....................................................56

*Gomez v. Toledo*,
    446 U.S. 635 (1980) .............................................................................................53

*Henricks v. Pickaway Corr. Inst.*,
    782 F.3d 744 (6th Cir. 2015) ...............................................................................53

*Hogan v. Winder*,
    762 F.3d 1096 (10th Cir. 2014) ............................................................. 42, 43, 44

*Jones v Dirty World Entm't. Recordings, LLC*,
    755 F.3d 398 (6th Cir. 2014) ................................................................ 27, 30, 31, 56

*Joseph v. Amazon.com, Inc.*,
    46 F. Supp. 3d 1095 (W.D. Wash. 2014),
    appeal dismissed (Dec. 19, 2014) ........................................................................36

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*,
    115 F.3d 1020 (D.C. Cir. 1997) ..........................................................................53

*Jurin v. Google, Inc.*,
    695 F. Supp. 2d 1117 (E.D. Cal. 2010) ...............................................................38

*Klayman v. Zuckerberg*,
  910 F. Supp. 2d 314 (D.D.C. 2012),
  *aff'd* 753 F.3d 1354 (D.C. Cir. 2014) ....................................................................22

*Kruska v. Perverted Justice Found. Inc.*,
  2008 WL 2705377 (D. Ariz. July 9, 2008) ...........................................................50

*Levitt v. Yelp! Inc.*,
  2011 WL 5079526 (N.D. Cal. Oct. 26, 2011),
  aff'd 765 F.3d 1123 (9th Cir. 2014) ............................................................. 40, 41

*Mid-Continent Cas. Co. v. True Oil Co.*,
  767 F.3d 1000 (10th Cir. 2014) ...........................................................................56

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) ............................................................................... 1, 53, 56

*Mmubango v. Google, Inc.*,
  2013 WL 664231 (E.D. Pa. Feb. 22, 2013) ...........................................................38

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) ....................................................................... 17, 56

*Nieman v. Versuslaw Inc.*,
  2012 WL 3201931 (C.D. Ill. 2012),
  *aff'd* 512 F. App'x 635 (7th Cir. 2013) ....................................................... 50, 51

*Novins v. Cannon*,
  2010 WL 1688695 (D.N.J. Apr. 27, 2010) ...........................................................22

*O'Kroley v. Fastcase, Inc.*,
  2014 WL 2197029 (M.D. Tenn. May 27, 2014),
  report and recommendation adopted, 2014 WL 2881526 ................. 37, 38, 39, 41

*Osage Tribal Council ex rel. Osage Tribe of Indians v. U.S. Dep't of Labor*,
  187 F.3d 1174 (10th Cir. 1999) ...........................................................................53

*Parisi v. Sinclair*,
  774 F. Supp. 2d 310 (D.D.C. 2011) .....................................................................23

*Parker v. Google, Inc.*,
  422 F. Supp. 2d 492 (E.D. Pa. 2006) ...................................................................39

*Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trustees*,
  235 F.3d 1243 (10th Cir. 2000) ............................................................20

*Roca Labs, Inc. v. Consumer Op. Corp.*,
  2015 WL 6437786 (M.D. Fla. Oct. 21, 2015) ........................ 23, 37, 41

*Shiamili v. The Real Estate Grp. of N.Y., Inc.*,
  952 N.E.2d 1011 (N.Y. 2011) ............................................................31

*Shrader v. Beann*,
  503 F. App'x 650 (10th Cir. 2012) (affirming district court's order,
  2012 WL 976032 (D. Colo. 2012 Feb. 17, 2012) ........................ 26, 36

*Vazquez v. Buhl*,
  150 Conn. App. 117 (Conn. App. 2014) ............................................22

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ................................. 17, 24, 32, 33, 36, 55

## STATUTES

15 U.S.C. § 1125 ...................................... 1, 2, 3, 12, 19, 23, 39, 49, 50, 51

28 U.S.C. § 1291 ...................................................................... 1, 2, 52

28 U.S.C. § 1331 ...................................................................................1

28 U.S.C. § 1367 ...................................................................................1

28 U.S.C. § 2676 ............................................................................ 53, 57

47 U.S.C. § 230 .......................................................................... passim

## RULES

C.R.C.P. Rule 12 ................................................................................14

## OTHER AUTHORITIES

Robert D. Sack, *Sack on Defamation* § 2:4.6 (2013) ..............................43

Webster's Third New Int'l Dictionary 618 (2002) ..................................29

## STATEMENT OF PRIOR OR RELATED APPEALS

There are no prior or related appeals.

## STATEMENT OF JURISDICTION

This case primarily involves claims for false advertising under the Lanham Act, 15 U.S.C. § 1125(a) and defamation. Appx. 217-20, 727-28.[1] The district court had jurisdiction over the false advertising claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims for libel, tortious interference, and conspiracy pursuant to 28 U.S.C. § 1367(a).

This Court has jurisdiction under 28 U.S.C. § 1291. This is an appeal of the district court's summary judgment order of August 18, 2015, Appx. 747-72, which denied Defendants' statutory immunity provided by 47 U.S.C. § 230. The order denying immunity is a final decision under 28 U.S.C. § 1291 and the collateral order doctrine. *See, e.g.*, *Mitchell v. Forsyth*, 472 U.S. 511, 527–30 (1985). *See infra* Section III; *see also* Appellants' Resp. to Pl.'s Emergency Mot. to Dismiss Appeal.

A notice of appeal was filed August 19, 2015. Appx. 773-76.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Where Defendants selected and republished third-party internet content about Plaintiff on their website, are they immune from Plaintiff's claims

---

[1] Citations to "Appx." refer to Appellants' Appendix submitted herewith.

related to that content under the Communications Decency Act, 47 U.S.C. § 230, which prevents a provider or user of internet content from being treated as a "publisher or speaker of any information provided by another" and precludes any legal action inconsistent with this protection?

2.    Does the immunity granted by 47 U.S.C. § 230 apply to Lanham Act false advertising claims?

3.    Where the district court denied immunity under 47 U.S.C. § 230 on an undisputed factual record and also ruled that immunity under 47 U.S.C. § 230 does not apply to Lanham Act false advertising claims, are the district court's rulings final ones under 28 U.S.C. § 1291 and the collateral order doctrine?

## STATEMENT OF THE CASE

Plaintiff-Appellee General Steel Domestic Sales, LLC filed suit on July 10, 2014, claiming that a webpage and several internet ads created by Defendants-Appellants Atlantic Building Systems, LLC d/b/a Armstrong Steel Corporation ("Armstrong") and its CEO, Ethan Chumley, were false and misleading about Plaintiff. The webpage at issue, referred to as the "Industry Related Legal Matters" ("IRLM") page on Armstrong's website, listed 37 cases and stories, all taken from elsewhere on the internet, about legal issues involving prefabricated steel building companies, including Plaintiff. The material content on the IRLM page was all copied from third-party internet sites – Defendants did not create any of it. Plaintiff

2

challenged 20 of the postings as false or misleading. Defendants moved for summary judgment, arguing, *inter alia*, that the Communications Decency Act ("CDA"), 47 U.S.C. § 230, immunized it against Plaintiff's claims. Appx. 347-73. The CDA is a federal law that protects website owners and users from suit for republishing third-party content on the internet.

The district court denied Defendants' motion for summary judgment on CDA immunity as to 17 of the 20 postings at issue. The order concluded Defendants were responsible for the republished third-party content because their selection of which content to publish did not fully describe the legal proceedings as a whole or highlighted unflattering portions of the content. Appx. 761-64. The district court also found the CDA did not apply to Lanham Act claims under 47 U.S.C. § 230(e)(2). Appx. 764.

Because the CDA provides an important statutory immunity from suit that would be lost if the case was tried, Defendants filed a Notice of Appeal on August 19, 2015. Appx. 773-76. Plaintiff moved to dismiss the appeal for lack of appellate jurisdiction and sought an emergency ruling. The Court denied the request for emergency ruling (Aug. 21, 2015 Order) and referred the motion to the merit's panel for determination. (Sept. 14, 2015 Order.)

## STATEMENT OF FACTS

### A.    General Background

Armstrong and General Steel compete in the prefabricated steel building industry. General Steel was founded in the mid-1990s and has been involved in a substantial amount of litigation, including: being sued in 2004 by the Colorado Attorney General for violations of the Colorado Consumer Protection Act; losing the first test-phase trial in that suit and being found to have committed numerous systemic violations over several years that misled consumers, warranting hundreds of thousands of dollars in fines as well as disgorgement, ultimately settling the suit with the state of Colorado for $4.5 million; suing and being sued by many customers in court; being sued by more customers in confidential arbitration proceedings; and being sued by former employees who recovered punitive damages verdicts against Plaintiff and its owner. Articles and information about Plaintiff's litigation and its treatment of customers are readily available on the internet.

It is also true that the parties are not strangers to legal conflict between each other. Plaintiff sued Mr. Chumley when he left its employ in 2005, a suit that it lost. Plaintiff also sued Defendants in 2010, shortly after Armstrong began selling steel buildings in direct competition with Plaintiff, asserting a host of claims (most of which were dismissed, but several of which Plaintiff prevailed on).

**B.    The Advertising at Issue In This Case**

In February 2014, Mr. Chumley created a page on Armstrong's website entitled "Industry Related Legal Matters." The complete page is included in Armstrong's appendix at Appx. 286-304. In brief, Mr. Chumley posted on the IRLM page excerpts from and links to third-party content that was found elsewhere on the internet. Most of the postings were from court filings involving companies in the prefabricated steel building industry, including Plaintiff. Plaintiff's theory is that the postings are misleading and inaccurate.

The IRLM page begins with a "disclaimer," which reads in part (Appx. 286):



The appearance of external hyperlinks does not constitute endorsement by Armstrong Steel of the linked web sites, or the information, contained therein. Armstrong Steel provides these links solely as a service for our visitors' information and convenience and does not control, approve, or endorse these sites, nor does Armstrong Steel control, approve, or endorse information contained therein. External links to non-Armstrong resources are in no way intended to represent an exhaustive listing.

These external hyperlinks represent allegations made by parties (which may or may not ultimately be adopted by a judge/jury) and findings of fact and law by judges/arbitrators. Some of the cases mentioned here may be ongoing, dismissed, settled and/or may not be final. For complete information on any case and/or the status of its finality, visit scholar.google.com or www.pacer.gov to conduct further research

After the disclaimer are 37 posts that all contain the same three parts: (1) a title; (2) body text; and (3) a "Read More" button. For instance, IRLM post #1 appears as follows:



Appx. 286-87, 375.

In all posts, both the title and "Read More" button are clickable links. When clicked, these links will take the visitor to the original third-party website where the source material quoted in each post is located. Appx. 378, 387-488. For example, clicking the title of Post #1 takes the visitor to a different website (CourthouseNews.com) which created the story quoted in Post #1 (Appx. 404, 535):



CourthouseNews.com also included a link to the class-action complaint cited in the story, a portion of which (shown below) was quoted in Post #1. Appx. 404-05.



Each substantive word in the body text of Post #1 consists solely of preexisting online content published on the Internet by a third-party source (CourthouseNews.com and a site publishing the complaint). It is undisputed that Defendants did not create any of this content or first publish it online. Appx. 378.

Instead, Defendants located the story and complaint on the internet and republished them on the IRLM page. Appx. 375-77. Although Defendants used a title for the post which differed slightly from the one used by Courthouse News,[2] Plaintiff never claimed the title used by Mr. Chumley was false or unlawful.

The IRLM page republishes content from third-party news sources, as well as short excerpts from, and links to, a number of court orders and pleadings in various lawsuits involving General Steel. These come from sources such as Google Scholar and other online databases of court filings. For example, the last item on the page (Post #37; Appx. 487) refers to one such case.



James Conner v. General Steel Domestic Sales, LLC
U.S. District Court of Colorado - This action involves the purchase and sale of a custom, pre-engineered steel building. A dispute arose between the parties concerning the building.

Read More

Like every other post on the page, the title and the "Read More" button in Post #37 contain links to the original source material – a copy of a court order entered in that case. Appx. 488, 679. Defendants did not put this court order online; it was

---

[2] Defendants used the following title for Post #1: "Class Action Complaint - Heinbaugh et al v. General Steel Domestic Sales, LLC". This content was not "created" by Defendants; it was compiled from the caption (Heinbaugh et al v. General Steel Domestic Sales, LLC) and title of the pleading (Class Action Complaint) posted by CourthouseNews.com.

9

published by Google as part of its free "Scholar" research service that publishes

copies of court records.[3]

The two sentences in Post #37– which simply noted that there was a lawsuit

filed against General Steel by a customer named James Conner, and that the case

involved a dispute over the sale of a building – were quoted verbatim from the

source page on Google. Appx. 487-88.



Post #37 is not a complete copy of every word published by Google

regarding the *Conner* case—it omits details such as the case number, the judge's

name, and the outcome of the specific motion addressed by the order (the case was

ordered to arbitration). A person viewing the IRLM page would not see this

---

[3] *See* https://scholar.google.com/intl/en/scholar/about.html.

10

information unless they clicked the "Read More" button to view the full order on Google's page. But none of these omissions render the facts of Post #37 false or misleading—it is still accurate to say that a customer named James Conner filed a lawsuit against General Steel, and that the dispute arose from the sale of a building.[4]

All of the other 18 IRLM posts Plaintiff challenged follow this same format. Each post contains an excerpt of text taken from an existing third-party source (*i.e.*, material already published online by somebody else). The excerpt in each post was selected by Defendants and republished on the IRLM page without modification other than trimming the material for length and, in a handful of posts, using non-sequential portions of text such as shown in Post #1. Appx. 374-488, 378 (Post #1). Each post ends with a "Read More" link leading viewers to the full original source. Appx. 378, 387-488. It is undisputed that all of the material text contained in these posts was copied verbatim from third-party websites. Appx. 382. Each of the third-party source pages and links continued to be available. Appx. 378. Thus, even if Defendants removed the IRLM page from their site, all of the stories, text, and

---

[4] Importantly, the document published by Google regarding the *Conner* case does not explain the final outcome of the dispute (if any), nor does it offer any additional details about the case other than the fact that a lawsuit was filed, the dispute arose from the sale of a steel building, and the matter was sent to arbitration.

articles that Plaintiff claims are false or misleading would remain online and publicly visible in their original locations.

As the district court found, all the "quotations and links on the IRLM Page are information obtained from the internet and published by the defendants on their website on the internet." Appx. 759. "General Steel does not claim that the IRLM Page contains inaccurate quotations of the court orders, the class action complaint, and the two articles quoted there." Appx. 761.

### C.    Plaintiff's Claims

The First Amended Complaint ("FAC") asserts a Lanham Act false advertising claim and three Colorado state-law claims: defamation, tortious interference, and civil conspiracy. The factual basis for all the claims is essentially the same. Appx. 178-223, 725-33.

Plaintiff's claims seek to impose liability on Defendants for republishing existing online content created by third parties. For example, Plaintiff alleged as to Post #1: "The subject post falsely states and/or implies that General Steel is an infamous telemarketer of steel-buildings which is a statement that is factually untrue and intentionally misleading." Appx. 188. It is undisputed that the statement was created solely by CourthouseNews.com based on that site's précis of the class-action Complaint filed in the *Heinbaugh* matter. The Complaint also alleged as to Post #1: "False and misleading statements in the subject post include, but are not

limited to, statements that General Steel 'systematically defrauds' its customers (not proven) and that General Steel's 'basic business plan' is to obtain a non-refundable deposit and never actually deliver a steel building to any customer for the price set forth in the contract (not proven)." *Id.* (parentheticals in original). Again, these statements were not created by Defendants; they came solely from the CourthouseNews.com article.[5] Finally, as to Post #1, General Steel claimed the post was false or misleading by omission, *i.e.,* the "subject post[] failed to state or disclose that the allegations were contested and were never proven." Appx. 189.

Plaintiff asserted these same theories with respect to all 20 challenged IRLM posts, alleging: (i) the facts and allegations in the body text of each post (content written entirely by third parties, not by Defendants) were false or misleading in some respect, (ii) each post omitted certain details such as the date of the underlying dispute or the fact that the matter was "unproven", and (iii) to the extent some of the posts referred to lawsuits or other legal matters without describing every detail including the final outcome, the posts were not a "full, complete and fair reporting of the subject matter." Appx. 178-224.

---

[5] The article reported "General Steel Corp. and its CEO Jeffrey Knight, 'infamous' telemarketers of steel-buildings, systematically defrauded their customers, in defiance of court orders, by, among other things, taking nonrefundable deposits and then refusing to deliver buildings for the price advertised, a class-action complaint claims in Federal Court." Appx. 404.

### D.    Proceedings in the District Court

On August 22, 2014, Defendants filed a Rule 12(b)(6) motion to dismiss asserting CDA immunity. Appx. 158-174. The motion was referred to a magistrate for a recommendation. Appx. 175-76. The magistrate did not issue a recommendation. Instead, less than 60 days before the summary judgement deadline, the magistrate judge suggested that Defendants withdraw the motion to dismiss and raise CDA immunity as part of a motion for summary judgment in order to make matters more efficient. Defendants followed this advisement, withdrew the motion to dismiss, Appx. 177, and refiled the motion as one for summary judgment, Appx. 347-73.

On August 18, 2015, shortly before trial, the district court issued an order denying most of Defendants' motion for summary judgment. Appx. 747-72. The order found that of the 20 IRLM posts Plaintiff challenged, Defendants were entitled to CDA immunity for three-and-a-half of them. The court made several key determinations germane to this appeal.

First, the court rejected Plaintiff's contention that the CDA did not apply because the material in the IRLM posts was actively selected by Defendants rather than being passively "submitted" to Armstrong's website by third parties. The court noted that "nothing in § 230 or the relevant case law limits § 230 immunity to information submitted directly to a website by a third party." Appx. 759.

Second, the district court held that "the links to third party websites on the IRLM

page are within the purview of § 230 immunity because the information behind

those links was created or developed by third party information content providers

[like Google and Courthouse News]." Appx. 759-60. Third, the court noted

Plaintiff "does not claim that the links to the documents referenced on the IRLM

page lead the user to inaccurate versions of the documents referenced. General

Steel does not claim that the IRLM page contains inaccurate quotations of the court

orders, the class action complaint, and the other two articles quoted there." Appx.

761.

Despite these conclusions, the district court went on to hold that CDA

immunity did not apply to most of the challenged posts for several reasons:

- The court found that Defendants lost CDA immunity because they "chose certain summaries and quotations describing the referenced court proceedings, failed to accurately describe the proceedings as a whole, and posted those quotations and summaries on the IRLM Page ..." showing that Defendants "developed the information posted on that page." Appx. 762 (emphasis added).

- The court held: "[h]ighlighting the unflattering allegations without providing other relevant information reasonably can be seen as contributing to the allegedly defamatory or otherwise actionable nature of the underlying information." *Id.* (emphasis added).

- The court ruled that the CDA does not provide immunity to Lanham Act false advertising claims. Appx. 764.

This appeal followed. The district court's denial of immunity was based on a misinterpretation and improperly narrow application of the immunity provisions of the CDA.

## SUMMARY OF ARGUMENT

The district court's interpretation and application of CDA immunity is contrary to law. The CDA provides immunity from suit by stating, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230(c)(1), and "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," *id.* § 230(e)(3). "'Information content provider' means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id.* § 230(f)(3). In short, the CDA provides immunity from suit for a website operator or user who republishes third-party content found elsewhere on the internet. This immunity applies here because Defendants are providers or users of an interactive computer service (the IRLM page), Plaintiff's claims treat them as the publishers or speakers of the challenged information, and all of the allegedly actionable content on that page was provided by another information content provider.

"Congress enacted § 230 to promote freedom of speech in the 'new and burgeoning internet medium' by eliminating the 'threat [of] tort-based lawsuits' against interactive services for injury caused by 'the communications of others.'" *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 985 n.3 (10th Cir. 2000) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)). Congress' intent was to "encourage the unfettered and unregulated development of free speech on the Internet." *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003). "To further the policies underlying the CDA, courts have generally accorded § 230 immunity a broad scope." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). Courts have also cautioned that to preserve the law's function, the CDA's boundaries must always remain clearly defined; "in cases of enhancement by implication or development by inference … section 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174–75 (9th Cir. 2008) (en banc).

The district court, however, impermissibly narrowed Section 230 immunity, exposing not just Defendants, but search engines, internet rating sites, internet retail sites, and others to broad liability for posting content created by others. This

is directly contrary to the statutory language and Congressional intent. The district court erred in three key ways:

First, it applied an incorrect standard for determining when a defendant creates or develops content versus when a third party creates or develops it. Immunity applies when a defendant selects and republishes content created and previously published on the internet by a third party. *Batzel*, 333 F.3d at 1031. On the other hand, the CDA does not protect content "developed" by the defendant. *F.T.C. v. Accusearch*, 570 F.3d 1187, 1201 (10th Cir. 2009). Here, the court recognized that all of the challenged material on the IRLM page was in fact republished from third-party sources, but it nonetheless found that Defendants "developed" the content by making editorial selections such as "emphasizing" negative content and failing to include some other apparently exculpatory (but never identified) details about the matters discussed on the page. This is inconsistent with the plain language of § 230(c)(1) and Tenth Circuit authority. Additionally, this definition of "development" would drastically change well-settled CDA boundaries by making any editorial decision to republish only part of a publication, or any algorithm (such as an internet search algorithm from Google or a review site's algorithm about which reviews to present) subject to suit and not protected by the CDA. Such a definition has never been adopted by this or any other court, and for good reason, since it would gut the protections the law is

supposed to provide. The CDA provides broad protection, including traditional editorial functions such as deciding what to publish. The district court applied the wrong legal standard.

Second, even assuming the court's legal test for development was correct (which it was not), it still erred in finding that Defendants developed content on the IRLM page by engaging in editorial conduct such as choosing to publish "snippets" of third party content, combined with a "Read More" link leading to the complete original source content. Put simply, this conduct is squarely within the established boundaries of CDA protection.

Third, the district court erred in holding that the CDA does not apply to Lanham Act false advertising claims. Plaintiff's Lanham Act claims involved false advertising, not intellectual property. Thus, as other courts have held, the intellectual property exception to the CDA does not apply. The CDA bars false advertising claims that treat Defendants as "publishers" just as it bars related libel or other claims.

Finally, this Court has jurisdiction to review the appeal of the denial of this immunity under the collateral order doctrine because the summary judgment order conclusively determined the immunity issue, concerned an important issue separate from the merits, and would be effectively unreviewable after final judgment.

## STANDARD OF REVIEW

This Court reviews de novo the district court's ruling denying immunity under the CDA. *See Getachew v. Google, Inc*., 491 F. App'x 923, 926 (10th Cir. 2012). The Court is reviewing an order denying application of a statutory immunity, similar to an order denying qualified immunity, which is reviewed *de novo*. *See Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004). Further, the appeal involves statutory interpretation, and this court reviews "de novo the district court's interpretation of a federal statute." *Ben Ezra*, 206 F.3d at 984. Finally, the appeal also raises free speech issues, and "[w]hen First Amendment issues are raised, our review is also de novo." *Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trustees*, 235 F.3d 1243, 1246 (10th Cir. 2000).

## ARGUMENT

## I.     THE CDA BARS PLAINTIFF'S CLAIMS

The CDA states in pertinent part: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

The relevant facts here are undisputed:

1.     Defendants operate a website that contains the posts at issue. Appx. 374. Defendants are thus a provider or user of an interactive computer service.

2.     Plaintiff alleges that 20 posts on the website are false or misleading. Appx. 178-223, 378. Plaintiff's claims treat Defendants as the publisher or speaker of the information. Appx. 217-223, 725-733.

3. Defendants did not create the disputed content; rather, third parties created and published it on the Internet. Appx. 382. Thus, it was provided by another information content provider.

4. Other than selecting which content to publish and which to omit, Defendants made no material changes to any of the republished content challenged by Plaintiff. *Id*.

Under these circumstances, CDA immunity applies and bars all of Plaintiff's claims involving the IRLM page.

### A.    The Plain Language of 47 U.S.C. § 230(c)(1) Bars Plaintiff's Claims

47 U.S.C. § 230 protects computer service providers from publication of information "originating with a third party." *Ben Ezra*, 206 F.3d at 984. To qualify for CDA immunity, the defendant must meet a three-part test:

First, immunity is available only to a "provider or user of an interactive computer service." [47 U.S.C.] § 230(c)(1)…. Second, the liability must be based on the defendant's having acted as a "publisher or speaker." *Id*. at § 230(c)(1). Third, immunity can be claimed only with respect to "information provided by another information content provider." *Id*.

*Accusearch*, 570 F.3d at 1196. Defendants meet all three prongs of this test.

1. Defendants Are Providers and Users of an Interactive Computer Service

The first element of immunity is easily established because Armstrong's website containing the IRLM page qualifies as an "interactive computer service" within the meaning of the CDA. *See, e.g., Accusearch*, 570 F.3d at 1195 (noting website operations are providers of interactive computer services); *Klayman v.*

21

*Zuckerberg*, 910 F. Supp. 2d 314, 318 (D.D.C. 2012), *aff'd* 753 F.3d 1354 (D.C. Cir. 2014). Defendants are thus "providers" of interactive computer service. Furthermore, as the parties who selected and posted content on the IRLM page, Defendants also qualify as users of an interactive computer service. *See Batzel*, 333 F.3d at 1030; *Novins v. Cannon*, 2010 WL 1688695, at *2 (D.N.J. Apr. 27, 2010).

Plaintiff argued below that the first element of immunity was lacking because the disputed content was not affirmatively submitted or "provided <u>to</u>" Defendants by the original author. But Plaintiff's reading of the statute is wrong. The statute requires only that the information at issue be "provided <u>by</u> another information content provider," 47 U.S.C. § 230(c)(1) (emphasis added); it does not require that the information be "provided <u>to</u>" the defendant. Thus, as the district court correctly recognized, "nothing in § 230 or the relevant case law limits § 230 immunity to information submitted directly to a website by a third party." Appx. 759; *see also Vazquez v. Buhl*, 150 Conn. App. 117, 129–133 (Conn. App. 2014) (explaining CDA applies where disputed content was "provided by" a third party to any website, not just content provided to the defendant). Accordingly, the first element for immunity is met.

> ### 2. Plaintiff's Claims Treat Defendants as Publishers/Speakers of Information

The second element of CDA immunity requires that liability be based on a defendant acting as a "publisher or speaker." *Accusearch*, 570 F.3d at 1196.

Plaintiff did not dispute this element below, and Defendants plainly satisfy it. Plaintiff's claims all treat Defendants as speakers or publishers of the challenged IRLM posts. Appx. 217-23, 725-33. They all involve Defendants' publishing of the challenged content on the internet. Courts have routinely held that the types of claims Plaintiff asserts fall within the CDA's ambit. *See, e.g., Barnes v. Yahoo!*, 570 F.3d 1096, 1101 (9th Cir. 2009) (defamation); *Roca Labs, Inc. v. Consumer Op. Corp.*, 2015 WL 6437786, at *5 (M.D. Fla. Oct. 21, 2015) (tortious interference and defamation); *Parisi v. Sinclair*, 774 F. Supp. 2d 310, 312 (D.D.C. 2011) (tortious interference and civil conspiracy); *Directory Assistants, Inc. v. Supermedia, LLC,* 884 F. Supp. 2d 446, 450 (E.D. Va. 2012) (Lanham Act violations). The second element of CDA immunity is satisfied.

> 3.     The Allegedly Actionable Content in the IRLM Posts Was Created by Another Information Content Provider, Not Defendants

The final prong of CDA immunity asks whether the allegedly unlawful information was "information provided by another information content provider." *Accusearch*, 570 F.3d at 1197 (quoting 47 U.S.C. § 230(c)(1)). "Information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). As a practical matter, if the internet content at issue was originally created or developed

by somebody else, then immunity applies to all subsequent republishers of that content. *See, e.g., Ben Ezra*, 206 F.3d at 985; *Zeran*, 129 F.3d at 330-31 ("Congress made a policy choice, however, not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages."); *Barrett v. Rosenthal*, 146 P.3d 510, 529 (Cal. 2006) ("Plaintiffs are free under section 230 to pursue the originator of a defamatory Internet publication. Any further expansion of liability must await Congressional action.").

Defendants provided undisputed evidence that third parties originally created and published the disputed content. Defendants provided a detailed affidavit explaining how Mr. Chumley created the IRLM page, and attached the source content to prove that all of the material on the IRLM page originated from third-party internet postings. The affidavit established:

> All of the text contained in these posts was copied verbatim from third party websites such as scholar.google.com and others. As to each of these posts, I reviewed pre-existing content posted on third party websites and decided which part of this content to include on the IRLM page, and which content to exclude. Other than selecting which content to publish, I made no substantive changes to any of the body text in any post on the IRLM page.

Appx. 382. Included with the affidavit was a table showing the original source of the material used in all 37 IRLM posts. Appx. 379-80. The table identified which 20 of the posts were identified in the First Amended Complaint and which were

not. Defendants also submitted copies of all 37 IRLM posts accompanied by screenshots and printouts showing the source content used in each post and where it came from, as well as complete, full-text copies of all source pages. Appx. 387-402, 535-679.

Plaintiff offered no evidence to rebut any of these points. It is undisputed that the source content originated with third parties, and was therefore provided by other information content providers. It is also undisputed that Defendants had no involvement whatsoever with the original creation and posting of the content by the third parties and that Defendants copied the third-party content to create the IRLM postings. Given this evidence, the district court correctly found the information challenged by Plaintiff was originally created and published online by third parties such as Courthouse News and Google. "In the present case, all of the quotations and links on the IRLM page are information obtained from the internet," and "the links to third party websites on the IRLM Page are within the purview of § 230 immunity because the information behind those links was created and developed by third party information content providers." Appx. 759-60.

The CDA provides immunity against claims that "would hold computer service providers liable for information originating with a third party." *Ben Ezra*, 206 F.3d at 984-85. It also protects internet users from liability for locating, forwarding, sharing, and otherwise republishing online content created by someone

else. *See, e.g., Supermedia, LLC*, 884 F. Supp. 2d at 452 (finding CDA provided immunity for defendant who compiled list of online complaints about the plaintiff and circulated them via email). Here, Plaintiff plainly seeks to impose liability upon Defendants for finding and republishing existing online content created by third parties. Based on the undisputed evidence, Defendants met all three elements for CDA immunity. Therefore, the CDA bars Plaintiff's claims as a matter of law. *See, e.g., Ben Ezra,* 206 F.3d at 985-86 (finding AOL immune where third party created content at issue and AOL published it); *Shrader v. Beann*, 503 F. App'x 650 (10th Cir. 2012) (affirming district court's order, 2012 WL 976032 (D. Colo. 2012 Feb. 17, 2012)).

### B. The District Court Erred By Finding That Defendants "Developed" the IRLM Posts

Even though the district court recognized that Defendants were republishing content created by another provider, it denied immunity for most of the posts based on a mistaken conclusion that Defendants' selection of the quotations helped to "develop" the challenged content, making Defendants into the providers of the content, and negating the third element of immunity. Appx. 762-64. Since the quotations were not created or developed by Defendants, however, this was error.

CDA immunity requires that the published information be provided by another "information content provider." Courts have worked to delineate the line between content provided by a third party versus content provided by the

defendant. They have been guided by 47 U.S.C. § 230(f)(2), which defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the <u>creation or development</u> of information provided through the Internet or any other interactive computer service" (emphasis added). Simply selecting and republishing content is not creation or development of it, regardless of how harmful it is. *See, e.g., Barnes*, 570 F.3d at 1102–03; *Batzel*, 333 F.3d at 1301 n.18. Republication cannot make one into a content provider because republication is precisely what the CDA protects. *See. e.g., Jones v Dirty World Entm't. Recordings, LLC*, 755 F.3d 398, 409 (6th Cir. 2014) ("An overly inclusive interpretation of 'development' in § 230(f)(3) would posit that a website operator is responsible for the development of content created by a third party merely by displaying or allowing access to it …. But to read the term so broadly would defeat the purposes of the CDA and swallow the core immunity that § 230(c) provides").

For example, in *Ben Ezra*, the content consisted of inaccurate stock information about the plaintiff company which was compiled and provided by a third-party vendor and then published by AOL. 206 F.3d at 983. The court concluded that AOL did not create or develop the content and therefore could not be considered a provider of it. *Id*. at 985-85. In contrast, in *Accusearch*, the defendant's business involved taking orders for phone records that were private and could not be legally disclosed. The defendant would then hire "researchers"

who illegally obtained the private information. 570 F.3d at 1198. Accusearch knew the information was private and illegally obtained. *Id.* The court determined that Accusearch was a "developer" of the publicly disclosed phone records because it paid third parties to unlawfully obtain private information that otherwise was not publically available. *Id*. at 1198-99.

Here, the district court erred by using the wrong definition of "development." Based on that error, the district court applied a standard that runs contrary to the law in this circuit, other circuits, and the intent of the CDA.

1.    The District Court Applied the Wrong Definition of Development

The district court explained its understanding of "development" as follows. "As used in § 230(f)(3), a service provider is responsible for the creation or development of information ... if the service provider 'in some way specifically encourages development of what is offensive about the content.'" Appx. 756-57 (quoting *Accusearch*, 570 F.3d at 1199). That is not the proper definition of the term "development" from *Accusearch*.

As noted, *Accusearch* involved a company that paid researchers to obtain illegal private information, which it then sold online for a profit. The defendant contended it was not the information content provider of the illegally obtained phone records even though it played an active role in the scheme. In rejecting CDA immunity, the Tenth Circuit analyzed the meaning of the word "development" in

the statute. *Accusearch,* 570 F.3d at 1197-98. The Court noted that "development" must mean something more than just "creation" because that word is also used in Section 230(f)(3). *Id*. at 1998. After looking at the definitions and "core meaning" of the word, the Court found that the essence of the word "development" in the statute was "the act of drawing something out, making it 'visible,' 'active,' or 'usable.'" *Id*. (citing Webster's Third New Int'l Dictionary 618 (2002)). Applying this definition to the facts in *Accusearch*, where the defendant was instrumental in drawing out and making visible content that would otherwise be confidential (*i.e*. publically unavailable), it is easy to see why the Court found the defendant was a content provider. *Id*. at 1198-99.

Thus, the interpretation of the word "development" under Tenth Circuit law is to make some content visible or usable that would not otherwise be so. It is obvious that republishing content that already exists on the internet does not fit this definition. And this definition is paired in the statute with "creation" of content, which is the manufacture of it in the first instance. Under *Accusearch*, a defendant is a content provider when it creates the content or helps to uncover content that somebody else created, but would not otherwise be available. This is not the standard that the district court applied.

The district court relied instead on dicta in *Accusearch* dealing with the meaning of "responsible." After it defined "development," the *Accusearch* decision

went on to discuss the meaning of "responsible" in Section 230(f)(2), since a service provider is one who is "responsible for the creation or development of information." *Id*. at 1198-99. The discussion of the particular meaning of "responsible" was unnecessary in that case, since based on the definition of "development," the defendant was responsible for the information under any definition of the word. Put another way, there was no question that Accusearch was responsible for the development of the public phone number records when its actions in ordering illegal acquisition of confidential information itself constituted the development. The Court's resulting conclusion – that "a service provider is 'responsible' for the development of offensive content only if it in some way specifically encourages development of what is offensive about the content," *id*. at 1199 – is thus dicta. Notably, the Sixth Circuit rejected this definition last year because it would eliminate much of the protection provided by the CDA. *See Jones*, 755 F.3d at 409 (reversing district court's denial of CDA immunity and ruling "the district court's test of development [based on *Accusearch*] is erroneous, swallowing the protection provided by § 230(c)(1) and undermining the purposes served by the CDA.").[6]

---

[6] Interestingly, while the district court applied the "encouragement" definition for responsibility, it noted that the Sixth Circuit in *Jones* had, "consistent with many sister circuits … adopted 'the material contribution test to determine whether a website operator is responsible, in whole or in part, for the creation or

Properly applied to this case, *Accusearch* means that if a defendant created unlawful content, or helped to uncover unlawful content that somebody else created but would not otherwise be available, then it is a developer and provider of that content. Applying that correct standard to the undisputed facts of this case, it is clear that Defendants did not make material contributions to the allegedly unlawful third-party content. Unlike in *Accusearch*, there is no evidence that Defendants encouraged any of the third-party sites to create the original content. Nor is there evidence that Defendants helped uncover or reveal content that was not already available. Indeed, the district court recognized that all the content was obtained from the internet, so it was already available. Appx. 759. The undisputed evidence shows Defendants simply republished verbatim portions of existing text. To the extent the text had any negative connotation with respect to Plaintiff, that connotation was in the original content.

As discussed further below, Defendants' choices regarding which content to republish, what to include and what to exclude are classic editorial choices at the heart of the CDA's protection. *See, e.g., Shiamili v. The Real Estate Grp. of N.Y., Inc.*, 952 N.E.2d 1011 (N.Y. 2011) (noting that allowing and republishing

---

development of [allegedly tortious] information.'" Appx. 758 (quoting *Jones*, 755 F.3d at 413).

"content—including negative commentary—is at the core of what section 230

protects") (citing *Accusearch*, 570 F.3d at 1195; *Zeran*, 129 F.3d at 330).

> 2.    Based on the Erroneous Understanding of *Accusearch*, the
> District Court Created a Standard That Is Contrary to Law

After articulating an erroneous understanding of *Accusearch*, the district

court denied immunity as follows:

> To the extent the defendants chose certain summaries and quotations
> describing the referenced court proceedings, <u>failed to accurately
> describe the proceedings as a whole</u>, and posted those quotations and
> summaries on the IRLM Page, the defendants developed the
> information they posted on that page. These <u>editorial choices</u> can be
> seen as a choice to emphasize unflattering allegations made against
> General Steel without summarizing or quoting information which
> reflects the nature and outcome of the court proceeding described. The
> claims of General Steel are founded on its contention that the
> defendants created an inaccurate image of General Steel by
> highlighting on the IRLM Page unflattering allegations against
> General Steel <u>without also describing the context of those claims or
> how those claims were resolved</u>. Highlighting the unflattering
> allegations without providing other relevant information reasonably
> can be seen as contributing to the allegedly defamatory or otherwise
> actionable nature of the underlying information. Such actions
> specifically encourage development of what is allegedly unlawful or
> legally actionable about the content and, thus, constitutes development
> of the information for the purpose of § 230 immunity.

Appx. 762 (citing *Accusearch*, 570 F.3d at 1196) (emphasis added).[7] This is a

standard that has never been adopted by any court. It is contrary to the definition of

---

[7] While the district court mentions that Defendants chose certain "summaries
and quotations," Appx. 762, this should not be read to suggest that Defendants
actually created or wrote any of the summaries. The court made clear that all

"development" in *Accusearch*. Despite the fact that Defendants did not create or develop the content that was posted on the IRLM page, the district court found that development occurred because the quotes were snippets that purportedly emphasized negative content or failed to accurately describe proceedings as a whole, even when that information is not in the original third-party source content. This ignores the law in the Tenth Circuit and other circuits as well. *See, e.g.*, *Accusearch*, 570 F.3d at 1198; *Ben Ezra*, 206 F.3d at 985; *Getachew*, 491 F. App'x at 926 (providing negative court document through Google search is not development); *Barnes*, 570 F.3d at 1103-04; *Carafano*, 339 F.3d at 1124; *Zeran*, 129 F.3d at 331. Additional cases are discussed below.

> 3.    Quoting "Excerpts" of Existing Third-Party Pages Is Not Development, Regardless of Whether the Snippet Fairly and Accurately Reflects All Content at the Source

The district court concluded that by publishing only <u>some</u> of the source material rather than <u>all</u> of it, Defendants thus "developed" the part selected, thereby resulting in a loss of immunity. Although this factual scenario has not been addressed by this Court, the existing cases in this circuit – as well as cases from other circuits and common-sense analysis of the implications of the district court's position – show why the district court is wrong.

---

material was taken from the third-party websites. More importantly, the undisputed evidence also makes this clear, as explained above.

To understand the factual basis for the district court's conclusion, consider the first posting on the IRLM page. Appx. 403-04. The district court found the CDA applied to the first paragraph because it contained a substantially full and complete copy of the entire source article published by CourthouseNews.com. A side-by-side comparison of the part used by Mr. Chumley and the entire original story shows that any differences (shown highlighted) were *de minimus*.

| IRLM Post #1 | |
|---|---|
| **IRLM Paragraph 1** | **Source—Courthouse News** |
| ==U.S. District Court of Colorado -== General Steel Corp. and its CEO Jeffrey Knight, "infamous" telemarketers of steel-buildings, systematically defrauded their customers, in defiance of court orders, by, among other things, taking nonrefundable deposits and then refusing to deliver buildings for the price advertised, a class-action complaint claims in Federal Court. | ==DENVER (CN) -== General Steel Corp. and its CEO Jeffrey Knight, "infamous" telemarketers of steel-buildings, systematically defrauded their customers, in defiance of court orders, by, among other things, taking nonrefundable deposits and then refusing to deliver buildings for the price advertised, a class-action complaint claims in Federal Court. ==See complaint==. |

Without any real analysis, the court reached a different conclusion with respect to the second paragraph of IRLM Post #1. Appx. 763. There, rather than publishing the entire text of the source (the source being a 12-page class-action complaint), Defendants only quoted a paragraph from the first page of the complaint. The full posting was thus:

34



The court did not explain what was somehow misleading about quoting a paragraph from the complaint or what else from the complaint should have been included, especially since the rest of the complaint was hardly complimentary to Plaintiff.

This type of conduct—excerpting and accurately quoting third-party content without making any substantive changes to the selected text—can never result in a loss of immunity because it is precisely the type of editorial conduct the CDA was enacted to protect. *See, e.g., Barnes*, 570 F.3d at 1103-04 ("[A] publisher reviews material submitted for publication, perhaps edits it for style or technical fluency, and then decides whether to publish it …. It is because such conduct is *publishing conduct* that we have insisted that section 230 protects from liability 'any activity that can be boiled down to deciding whether to exclude material that third parties

seek to post online.'") (emphasis in original); *Roommates*, 521 F.3d at 1171 ( "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230"); *Carafano*, 339 F.3d at 1124 (finding republished content was protected "regardless of the specific editing or selection process."); *Zeran*, 129 F.3d at 331 (holding lawsuits seeking "to hold a service provider liable for its exercise of a publisher's traditional editorial functions--such as deciding whether to publish, withdraw, postpone or alter content--are barred"); *Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1106 (W.D. Wash. 2014), appeal dismissed (Dec. 19, 2014) (noting "Whether the website operator removes certain reviews, publishes others, or alters the content, it is still entitled to CDA immunity, since those activities constitute a publisher's traditional editorial functions."); *Shrader*, 2012 WL 976032, at *8–9 (adopting standard from *Zeran*).

CDA immunity applies even if the excerpt or snippet selected by Defendants was incomplete, and even if it contains material Plaintiff finds offensive or unfair or less than representative of the "whole" posting. This is so because, regardless of which part of the source material Defendants chose to publish and which part they omitted, <u>the underlying information still originated with a third party, not Defendants</u>. Making editorial choices of this sort does not transform Defendants into the creator or developer of the underlying information. *See, e.g., Roca Labs*,

2015 WL 6437786, at *6 (noting that immunity depends on the "source of the information" and not "the source of the statement itself.") (quoting *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 295–96 (D.N.H. 2008)).

This exact point was recently discussed in the closely analogous case of *O'Kroley v. Fastcase, Inc.*, 2014 WL 2197029 (M.D. Tenn. May 27, 2014), report and recommendation adopted, 2014 WL 2881526. Plaintiff there claimed Google had produced an inaccurate "snippet" falsely implying the plaintiff had been convicted of a sex crime. Plaintiff ran a Google search for his own name which produced the following (somewhat nonsensical) result: "... indecency with a child in Trial Court Cause N ... *Colin O' Kroley v. Pringle,* (Tex. App. 2012). MEMORANDUM OPINION On February 9, 2012, Colin O'Kroley filed in." 2014 WL 2197029, at *1 (ellipses in original).

This snippet of text was not created by a third party; it was created by Google from a much longer portion of text located on a third-party website. However, in the original context, Mr. O'Kroley's name did not appear anywhere near the phrase "indecency with a child." This juxtaposition only occurred in the search results page generated by Google. The plaintiff alleged that Google placed his name in close proximity to the words "indecency with child," thereby implying that he had been charged or convicted of that crime when, in fact, he had not (a point that was only apparent to a person who clicked the link produced by Google

and viewed the entire source page). The plaintiff alleged "Google's automated algorithm excerpted language from the Texas Advance Sheet to create the physical juxtaposition of two sentence fragments separated by an ellipsis, and that this resulting 'snippet' is defamatory, although the underlying information from the Texas Advance Sheet, when read in its entirety, clearly is not." *O'Kroley,* 2014 WL 2197029, at *2.

The court ruled that Google was entitled to CDA immunity even though it created the misleading snippet by reordering the words taken from the source page. It ruled that, "based upon the 'robust' immunity afforded under Section 230, … the editorial acts of Google creating the offensive search result are subject to statutory immunity." *Id.* at *3. *O'Kroley* is consistent with this Court's conclusion that, under the CDA, "Google cannot be held liable for search results that yield content created by a third party." *Getachew*, 491 F. App'x at 926. That view is also shared by essentially all other courts that have consider similar issues. *See, e.g.,* *Gavra v. Google, Inc.*, 2013 WL 3788241 (N.D. Cal. July 17, 2013) (finding Google entitled to CDA immunity); *Mmubango v. Google, Inc.*, 2013 WL 664231 (E.D. Pa. Feb. 22, 2013) (agreeing, "Google cannot be held liable for state law defamation on the facts that it 'decided' to publish a third party's statements, which has been identified by the Third Circuit as a traditional editorial function."); *Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117 (E.D. Cal. 2010); *Black v. Google*, Inc., 2010 WL

3222147 (N.D. Cal. Aug. 13, 2010) (finding Lanham Act false advertising and related claims against Google barred by CDA), *aff'd*, 457 F. App'x. 622 (9th Cir. 2011); *Parker v. Google, Inc*., 422 F. Supp. 2d 492, 501 (E.D. Pa. 2006) (noting "It is clear that § 230 was intended to provide immunity for service providers like Google").

What Google did in *O'Kroley* and other cases is the same sort of thing Defendants are sued for doing here. CDA immunity applies to Defendants, just as it does to Google.

The district court relied upon language from *Roommates*, 521 F.3d at 1170, in reaching its determination that while minor (non-material) edits to third-party content are not "development," edits that materially change non-actionable content into libelous speech would qualify as such. Appx. 762-63. *Roommates* explained, however, that "a website operator who edits in a manner that contributes to the alleged illegality-such as by removing the word 'not' from a user's message reading '[Name] did *not* steal the artwork' in order to transform an innocent message into a libelous one-is directly involved in the alleged illegality and thus not immune." 521 F.3d at 1169 (emphasis in original). General Steel's claims in this case are nothing like the hypothetical from *Roommates*. There is no basis for Plaintiff to claim Defendants removed or changed words to transform innocent content into a libelous message. At most, Defendants exercised editorial discretion

by choosing to publish certain excerpts, along with a link to the original source, exactly like Google and many other websites do. This type of editorial practice is squarely within the traditional scope of CDA immunity. The district court erred by holding otherwise.

> 4.    The District Court's Definition of "Development" Would Eviscerate the "Robust" Immunity Congress Intended to Create

Against this vast weight of authority, the rule applied by the district court could deny immunity to websites like Google in nearly every instance simply because Google does not always show the "full and complete" contents of every source page in its search results. Immunity would also be denied in any case where Google's search results display a "snippet" of content which does not fairly or accurately reflect everything found on the source page. The same is true for third-party review sites such as Yelp, which must decide which reviews to show about a restaurant or business and which reviews to block. If a site like Yelp published anything less than all reviews, or the "full and complete" contents of individual reviews, it could be found to have "developed" the third-party content and not have the protection of the CDA – the very situation Congress intended for the CDA to immunize. Other courts have rejected precisely that argument. *See Levitt v. Yelp! Inc.*, 2011 WL 5079526, at *7 (N.D. Cal. Oct. 26, 2011) ("Plaintiffs' allegations of extortion based on Yelp's alleged manipulation of their review pages—by removing certain reviews and publishing others or changing their order of

40

appearance—falls within the conduct immunized by § 230(c)(1)."), *aff'd* 765 F.3d 1123 (9th Cir. 2014).

As these examples and cases like *O'Kroley* show, search results produced by search engines like Google or reviews provided by Yelp may be claimed to be misleading and may not always accurately reflect the contents of each source page. Nevertheless, CDA immunity applies because the snippets remain "information provided by another information content provider." 47 U.S.C. § 230(c)(1). This logic applies not only to Google, but to <u>any</u> website operator or user who republishes abbreviated excerpts of third-party content. *See*, *e.g.*, *Roca Labs*, 2015 WL 6437786, at *6 (immunity protects website operator who used Twitter to republish excerpted "teaser" versions of third-party complaints "because the underlying information was provided by a third party").

The district court's reasoning also ignores the reality of the modern day Internet. Specifically, unlike a newspaper or print publication which can publish a story of any length in a single physical edition simply by adding more pages, the Internet works differently. Computer screens can only display a limited amount of text at a time. When faced with a story longer than one page (or one screen) in length, website operators must require viewers to either scroll down or click a link to see the rest of the story. Similarly, websites like Google, Yahoo!, Bing, and others cannot possibly display <u>every word</u> of the many billions of pages they

index. Instead, sites like Google must use abbreviated snippets of text which may, or may not, accurately reflect the material at the source page.

Likewise, Google cannot possible display <u>every</u> potentially relevant result in a single page. Instead, Google must necessarily select which results to show in the coveted first page of its results, and in doing so, it must also choose which content <u>not to include</u> on that page. Despite engaging in such editorial acts, no court has ever found that Google could be denied CDA immunity on those grounds. The same conclusion applies here. As the district court already found and as the undisputed evidence shows, Defendants did <u>not</u> materially change any wording of the original source material. They simply used excerpts as "teasers" coupled with links to the full source page. Defendants therefore did not "develop" any content on the IRLM Page.

In an analogous context, this Court recently considered a case involving an allegedly defamatory newspaper headline which included a link to the full-text of the article. *See Hogan v. Winder*, 762 F.3d 1096 (10th Cir. 2014). Viewed in isolation, the headline was allegedly unlawful because it impliedly defamed the plaintiff. However, the full article eliminated the defamatory implication of the headline. Because the underlying article was written by the newspaper's staff rather than a third party, the CDA was not implicated. However, the case is helpful because it considered a similar situation to that presented here—whether a headline

42

or other excerpt should be read separately from the body of the article it relates to when evaluating whether the message conveyed is impliedly defamatory. In other words, *Hogan* effectively answered the question of whether publishing a headline separately from the associated article would qualify as "development."

Much as General Steel does here, the plaintiff in *Hogan* suggested that the newspaper's headline should be read separately and in isolation from the main body of the article. This Court rejected that argument, explaining:

> [N]o reasonable reader would assume that the headline told the whole story and take it at face value. The reader instead would realize that the publisher was advertising a full article on a dispute and the body of the article would provide context for the headline. As one commentator put it, "[a] headline cannot, of course, set forth all the details of an article or capture completely its tone. It is not actionable for doing what it is supposed to: interest the reader in perusing the article proper. That it 'teases' the reader into reading further is not blameworthy, so long as the headline is not misleading." What is more, in this case the headline's context was readily accessible. With one mouse click, any reader could access the full story and would readily realize the nature of the accusation.

*Hogan*, 762 F.3d at 1109 (emphasis added) (quoting Robert D. Sack, *Sack on Defamation* § 2:4.6 (2013)).

In affirming the dismissal of the plaintiff's defamation claim, this Court agreed that even if the headline was ambiguous or incomplete, "Reasonable readers would identify this ambiguity and, before assuming they knew what had happened, would proceed to the text of the article for clarification." 762 F.3d at 1109–10. Applying the same standard here shows why Plaintiff's "development"

argument cannot stand. The undisputed evidence shows that each IRLM post contained a "Read More" button informing readers that there was more to the story. Like the readers in *Hogan*, no reasonable person interested in learning about General Steel would view the IRLM excerpts in isolation and believe the entire story had been told. Rather, "reasonable readers would recognize that the short excerpt of the news article here does not tell the full story; and, if readers want the full story, they will scroll through the rest of the article." *Id.* at 1110.

As this Court held in *Hogan*, the fact that a person viewing Armstrong's IRLM posts would need to click a link to read the full text of the original third party publication cannot qualify as development because, as a matter of law, no reasonable viewer would consider the IRLM excerpts in isolation. Instead, they would see the prominent "Read More" button and if they wanted to see the full story, they could easily do so with a single click. In sum, the district court erred when it concluded that Defendants "developed" the IRLM posts by selecting excerpts that were separated from the full text of the original story with a link to the original source. Because the full context of the original story was always only one mouse-click away, these minor changes were insufficient to qualify as making a material change to the underlying source material.

## C.     Plaintiff Cannot Prevail Even Under Its Own Theory

In addition to denying immunity based on Defendants' decision to publish only short excerpts of text from other sites rather than their complete contents, the district court also found Defendants arguably engaged in development by omission, *i.e.*, they could be viewed to have created an unfair or misleading impression of Plaintiff's litigation history by "[h]ighlighting unflattering allegations <u>without providing other relevant information</u> ...." Appx. 762 (emphasis added). The court did not explain what "other information" it had in mind, but it found most of the IRLM posts were "developed" by Defendants because they did not "summariz[e] or quot[e] information which reflects the nature and outcome of the court proceeding described." *Id*. The court also noted Defendants chose excerpts "describing" court proceedings without "accurately describe[ing] the proceedings as a whole." *Id*. In these two similar but distinct ways (by purportedly omitting favorable information originally contained in the source, or by failing to independently locate and include favorable information not originally contained in the source), the court held CDA immunity was lost. As explained above, all of these conclusions were incorrect formulations and applications of the law.

However, even if the district court's legal standard was correct, and even assuming that "development" could include choosing to publish only negative portions of an article which contains both positive and negative parts, the district

court still erred in applying its own standard. This is so because Plaintiff offered no evidence showing that Defendants omitted positive information that was <u>present in the source pages</u> which would have somehow materially altered the meaning of the IRLM posts. In *Roommates* (which the district court followed), the Ninth Circuit posited that CDA immunity would be lost if a defendant made <u>material alterations</u> to a third party message; *i.e.*, by adding or removing words in order to "transform an innocent message into a libelous one ...." *Roommates*, 521 F.3d at 1169. Plaintiff offered no evidence or argument to show that this factual scenario occurred here.

To the extent Plaintiff claims the IRLM content was negative, so was the original source. Thus, when Defendants republished this same material, they did not materially change the meaning of it – they did not change an innocent message into a libelous one. *See id.* at 1170; *see also Batzel*, 333 F.3d at 1032 ("The scope of [section 230] immunity cannot turn on whether the publisher approaches the selection process as one of inclusion or removal, as the difference is one of method or degree, not substance.").

Plaintiff's argument assumed that all of the cited third-party sources for the IRLM posts contained <u>both</u> harmful allegations against Plaintiff and also beneficial or exculpatory facts which negated the harm caused by such allegations. If true, then, by Plaintiff's logic, Defendants developed the IRLM posts by excluding all

exculpatory details which were originally present in the source material, thus creating a misleading impression of the original source page.[8] However, as Defendants pointed out in the district court, "Plaintiff fails to demonstrate that any editing for length <u>materially</u> altered the content's message." Appx. 716. Plaintiff failed to identify any instance in which the <u>source page</u> contained favorable material facts or other information beneficial to it that was omitted from the IRLM page.

Again, using Post #1 as an example, the IRLM page included a complete copy of an article published by CourthouseNews.com describing allegations made in a class-action lawsuit against General Steel. The article did not suggest that the claims against General Steel were unfounded or state how the suit resolved. Yet, republishing this article was, according to the district court, protected. Because the original Courthouse News article only contained negative information about the lawsuit against General Steel (not a mix of both positive and negative points), there was no basis for General Steel to claim that Mr. Chumley "developed" the content shown on the IRLM page by intentionally <u>excluding</u> favorable or "other relevant information" from Post #1. The same could be said for the class action complaint from which a quote was also added to Post #1. Puzzlingly, the district court found

---

[8] For the reasons explained above, Defendants' position is that as long as the source material was accurately quoted, the CDA would apply regardless.

one paragraph was developed by the third party and one by Defendants. Appx. 763.

Plaintiff failed to explain what was left out of each posting. This point is confirmed by the only relevant evidence Plaintiff submitted at the summary judgment stage—an affidavit from its owner, Jeffery Knight. Appx. 701-12. The affidavit failed to identify even a single favorable word or sentence that was present in the original source articles/pages but omitted from the IRLM excerpts. On the contrary, the alleged factual deficiencies involved the exclusion of "other information" which was <u>not present in the original third party source pages</u>.

For instance, Mr. Knight's entire discussion of IRLM Post #1 is shown here:

> Chumley's "Industry Related Legal Matters" webpage publication related to the *Heinbaugh* "class action" <u>is not a complete or fair report of that proceeding</u>. Specifically, the publication reflects that General Steel "systemically defrauds" its customers, that General Steel's "basic business plan" is to "obtain a non-refundable deposit and never actually deliver a steel building to any customer for the price set forth in the contract," and that General Steel acts "in defiance of Court orders." <u>These statements are literally false</u>. None of them was ever established in the case. The "class action" was filed by Defendants' attorney Grant, but no class was ever certified, and Mr. Grant never filed any motion for certification of a class. Instead, the case was settled early as to a minute fraction of the putative class. <u>Chumley's publication does not disclose these facts</u>.

Appx. 701-02 (emphasis added). Plaintiff's objection to the posting was that (i) it republished something negative, and (ii) it failed to include "other information"

that was not present in the original source article. Both of these theories are barred by the CDA. *See, e.g., Ben Ezra*, 206 F.3d at 986.

Indeed, if General Steel's view of the law was correct, every website that published any false, incomplete, inaccurate or misleading information would be denied CDA immunity unless the site operator independently searched for and included "other relevant information" (not present at the original source) which corrected the false or incomplete information it republished. Of course, in that case, the CDA would only apply when the published content was <u>not inaccurate or incomplete</u>, which means the CDA would only apply when it was not needed. As discussed above, this Court should firmly reject this absurd and illogical result.

In sum, even under its own erroneous standard, the district court erred in finding Defendants "developed" the challenged IRLM postings.

## II.    THE CDA APPLIES TO FALSE ADVERTISING CLAIMS

The district court also held that CDA immunity does not apply to Lanham Act false advertising claims. The court reasoned that a false advertising claim is a type of "intellectual property" claim and therefore subject to 47 U.S.C. § 230(e)(2) which provides: "Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property."

The district court erred in reaching this conclusion. The district court did not examine the legal claim that Plaintiff brings here, or the type of legal right Plaintiff

is attempting to vindicate. Plaintiff's claim is for false advertising, and it does not involve any aspect of Plaintiff's trademark, copyright, or any other intellectual property. Put differently, Plaintiff has no intellectual property rights in the IRLM page. Rather, the only legal interest at stake is preventing allegedly false advertising. Although Plaintiff's claim arises in a chapter of the U.S. Code that addresses a species of intellectual property (*i.e.*, trademarks), that does not make Plaintiff's claim one pertaining to "intellectual property." And no ruling by this Court regarding Plaintiff's false advertising claim will limit any "law pertaining to intellectual property." Indeed, as one court had noted, the "claim that Section 43(a) of the Lanham Act defeats the immunity provision in the CDA has no support in statute or case law." *Kruska v. Perverted Justice Found. Inc.*, 2008 WL 2705377, at *3 (D. Ariz. July 9, 2008); *see also Supermedia, LLC,* 884 F. Supp. 2d at 450 (explaining that "the CDA precludes liability for defamation, tortious interference with business expectancy, and violations of the Lanham Act."); *cf. Black*, 2010 WL 3222147, at *2 (finding CDA barred FTC Act false advertising claim because "Plaintiffs' complaint demonstrates that they seek to impose liability on Defendant [Google] for content created by an anonymous third party."); *aff'd* 457 F. App'x 622 (9th Cir. 2011).

In support of its position below, Plaintiff relied on *Nieman v. Versuslaw Inc.*, 2012 WL 3201931 (C.D. Ill. 2012), *aff'd* 512 F. App'x 635 (7th Cir. 2013).

However, *Nieman* does not support Plaintiff's argument. Like this case, the plaintiff in *Nieman* sued various websites for the same conduct at issue here—publishing unflattering court records from litigation in which Mr. Nieman was a party. Like Plaintiff, Mr. Nieman also complained that the defendants failed to include full and complete copies of every pleading from his case. *See Nieman*, 2012 WL 3201931, at *1. These allegations are substantially identical to General Steel's, yet the district court found they failed as a matter of law. The *Nieman* court resolved all claims in favor of the defendants on multiple different grounds. As to the Lanham Act claim, the primary basis for dismissal was lack of standing. *See id.* at *5. However, the court also found all of Mr. Nieman's claims (including his Lanham Act claim) were barred by the First Amendment privilege to publish court records. *Id.* at *7. After dismissing all claims on First Amendment grounds, the court made a passing reference to the IP-claim limitation in 47 U.S.C. § 230(e)(2). However, the court expressly declined to reach that issue. *Id.* at *9.

In sum, the CDA may not apply to limit a law pertaining to intellectual property, but the CDA would impose no such limits in this case. False advertising is not an intellectual property claim, and no court – other than the district court here – has found it to be so under section 230.

### III.   THIS COURT HAS JURISDICTION TO HEAR THE APPEAL

Although the question of jurisdiction has been briefed in response to Plaintiff's Emergency Motion to Dismiss, Defendants provide some additional briefing on the subject here. The district court's order was a final one as to the CDA issues under 28 U.S.C. § 1291 and the collateral order doctrine. For the collateral order doctrine to apply, permitting appellate review of an interlocutory order denying immunity, "an appellant must establish that the district court's order (1) conclusively determined the disputed question, (2) resolved an important issue completely separate from the merits of the case, and (3) is effectively unreviewable on appeal from a final judgment." *Arbogast v. Kan. Dep't of Labor*, 789 F.3d 1174, 1179–80 (10th Cir. 2015) (internal quotation marks and citation omitted). Here, Plaintiff does not challenge the first element—that the order conclusively determined CDA immunity. There is no dispute that the order did. Defendant has also met the second two elements.

### A.   The Order Denying CDA Immunity Resolved an Important Issue Separate From the Merits

The order denying CDA immunity resolved an important issue separate from the merits of Plaintiff's claims. Plaintiff sued Defendant for false advertising and defamation, among other claims. But the order did not address the merits of Plaintiff's claims. Rather, the order denied CDA immunity from suit, which is separate from the merits. "[A] claim of immunity is conceptually distinct from the

merits of the plaintiff's claim," *Mitchell*, 472 U.S. at 527, despite the fact that "the resolution of these legal issues will entail consideration of the factual allegations that make up the plaintiff's claim for relief," *id.* at 528. *See Farmer v. Perrill*, 275 F.3d 958, 961-62 (10th Cir. 2001) (holding issue of immunity from suit under 28 U.S.C. § 2676 was separate from the plaintiff's substantive *Bivens* claims); *Osage Tribal Council ex rel. Osage Tribe of Indians v. U.S. Dep't of Labor*, 187 F.3d 1174, 1180 (10th Cir. 1999) (holding order immediately appealable under collateral order doctrine and that "the question of [immunity] based on tribal sovereignty is distinct from the underlying merits of whether the Council violated Mr. White's whistle blower rights"); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("[T]his Court has never indicated that qualified immunity is relevant to the existence of the plaintiff's cause of action."); *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1026 (D.C. Cir. 1997) ("[T]he issue of sovereign immunity is distinct from the question of liability on the claims asserted in the complaint.").

Here, the district court did not decide whether Defendants falsely advertised against or defamed Plaintiff—the merits of Plaintiff's claims. *See Henricks v. Pickaway Corr. Inst.*, 782 F.3d 744, 750 (6th Cir. 2015) ("Because [an immunity] analysis virtually never turns on facts material to the merits of a plaintiff's claim, it cannot fall into the category of qualified immunity appeals that ultimately depend

on issues that are part of the plaintiff's underlying claim and are thus unappealable.") Instead, the court's immunity determination turned on the legal interpretation of the term "development" in the CDA statute. Appx. 761-62; *see Accusearch*, 570 F.3d at 1197–98. The meaning and application of "development" under the CDA is completely separate from the merits of Plaintiff's substantive claims, such as false advertising and defamation, whose elements do not require proof regarding "development" of content. Such a purely legal determination of immunity is immediately appealable under the collateral order doctrine, in part, because it is separate from the merits. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1153 (10th Cir. 2008); *Fisher Sand & Gravel Co. v. Giron*, 465 F. App'x 774, 777 (10th Cir. 2012).

Further, the denial of CDA immunity from suit is a vitally important issue— nothing less than the chilling of First Amendment freedom of speech on the internet is at issue. The CDA protects free speech on the internet. Courts have agreed that the free speech interests are of such importance that an interlocutory appeal is appropriate when statutory immunity designed to protect speech is denied. *See DC Comics v. Pac. Pictures Corp*., 706 F.3d 1009, 1015-16 (9th Cir. 2013) ("It would be difficult to find a value of a 'high[er] order' than the constitutionally-protected rights to free speech and petition that are at the heart of California's anti-SLAPP statute."); *Batzel*, 333 F.3d at 1018. The Tenth Circuit has

explained that CDA immunity is intended to protect precisely these interests. *Ben Ezra,* 206 F.3d at 985 n.3 ("Congress enacted § 230 to promote freedom of speech in the 'new and burgeoning Internet medium' by eliminating the 'threat [of] tort-based lawsuits' against interactive services for injury caused by 'the communications of others.'"(quoting *Zeran*, 129 F.3d at 330)). The importance of the interests protected by CDA immunity underscores why this appeal is immediately appealable under the collateral order doctrine.

In sum, the order resolved an important issue separate from the merits.[9]

## B.   The Order Denying CDA Immunity is Effectively Unreviewable on Appeal After Final Judgment

A pre-trial denial of CDA immunity is unreviewable after a final judgment because, after a trial, there will be no way to vindicate Defendants' privilege not to

---

[9] Plaintiff, in its reply in support of its Emergency Motion to Dismiss, argued that the CDA immunity could not have been that important, and that Defendants waived their immunity argument, because Defendants withdrew their motion to dismiss based on this immunity. Plaintiff's argument is incorrect. Defendants filed their motion to dismiss right away. After the motion was referred to the magistrate judge for a report and recommendation and had been pending for six months, the magistrate judge suggested at a February 2, 2015 hearing that the motion be withdrawn in favor of a motion for summary judgment, pointing out that it was less than 60 days from the dispositive motion deadline of March 30, 2015. Appx. 177. The magistrate judge's rationale was that he would not be able to complete a recommendation until the end of the month, and the losing party would then file an objection, and those objections would not be fully briefed until just before the dispositive motion deadline. He suggested that the "better, more efficient way" to resolve the case was on summary judgment. Defendants heeded the magistrate judge's advice.

stand trial in the first place. The immunity from suit is lost if a case is erroneously permitted to go to trial.

CDA immunity is immunity from suit, not just immunity from liability. *Ben Ezra*, 206 F.3d at 983 (holding defendant "is immune from suit under § 230"); *Carafano*, 339 F.3d at 1125 ("[W]e conclude that Congress intended that service providers such as Matchmaker be afforded immunity from suit."); *Nemet Chevrolet, Ltd.*, 591 F.3d at 254 (immunity from suit); *see also Jones*, 755 F.3d at 407 (noting the expansive nature of CDA immunity); *Goddard v. Google, Inc.*, 2008 WL 5245490, at *2 (N.D. Cal. Dec. 17, 2008) (same).

Immunity from suit is a right not to go to trial at all. *Mitchell,* 472 U.S. at 527. The CDA expressly states that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3) (emphasis added). "A cause of action is the fact or combination of facts which give [ ] rise to a suit." *Mid-Continent Cas. Co. v. True Oil Co.*, 767 F.3d 1000, 1005 (10th Cir. 2014) (internal quotation marks and citation omitted). The Tenth Circuit defines "suit" broadly to include legal proceedings, at law or equity, or judicial process. *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1159-60 (10th Cir. 2014). Accordingly, because the CDA explicitly states that "no cause of action [which gives rise to a suit] may be brought," the CDA provides immunity from suit.

Moreover, the Tenth and Ninth Circuits have interpreted substantially similar language in other statutes as providing immunity from suit, and held that orders denying such "immunity" are immediately appealable under the collateral order doctrine. In *Farmer v. Perrill*, the Tenth Circuit held that it had jurisdiction under the collateral doctrine to review an appeal of a summary judgment order denying a statutory immunity from suit under the Federal Tort Claims Act. 275 F.3d 958, 961 (10th Cir. 2001). The Tenth Circuit noted that Section 2676 of the FTCA "bars 'any action' against federal employees after a judgment in an FTCA case involving 'the same subject matter,' and as such it confers immunity from further suit rather than just from liability." *Id.* at 961. Finding further that the district court's ruling based on Section 2676 was conclusive and separate from the merits of the plaintiff's claims, the Tenth Circuit held that the district court's summary judgment order denying immunity under Section 2676 was immediately appealable under the collateral order doctrine. *Id.* at 961-62.

The Ninth Circuit held that language in the General Aviation Revitalization Act of 1994 ("GARA"), which stated that "no civil action . . . <u>may be brought</u> . . . if the accident occurred—(1) after the applicable limitation period." "creates an explicit statutory right not to stand trial which would be irretrievably lost should Bell Helicopter be forced to defend itself in a full trial." *Estate of Kennedy v. Bell Helicopter Textron, Inc.*, 283 F.3d 1107, 1110 (9th Cir. 2002) (emphasis added)

(holding denial of summary judgment under GARA was an immediately appealable order under the collateral order doctrine).

The CDA immunity is immunity from suit, which is effectively lost if a case is erroneously permitted to go to trial. Thus, an order denying CDA immunity is unreviewable on appeal, and this Court has jurisdiction to review this appeal, now, under the collateral order doctrine. *See Farmer*, 275 F.3d at 961-62.

## CONCLUSION

For all the foregoing reasons, the judgment of the district court should be reversed and this matter remanded with instructions to enter summary judgment in favor of Defendants on all claims involving the IRLM page.

Dated:  November 9,  2015                Respectfully submitted,


                                         *s/ Craig R. May*
                                         Craig R. May
                                         Kenneth E. Stalzer
                                         Wheeler Trigg O'Donnell LLP
                                         370 Seventeenth Street, Suite 4500
                                         Denver, CO 80202-5647
                                         Telephone:  303.244.1800
                                         Facsimile:  303.244.1879
                                         Email:     may@wtotrial.com
                                                    stalzer@wtotrial.com

                                         David S. Gingras
                                         Gingras Law Office, PLLC
                                         4802 E. Ray Road, #23-271
                                         Phoenix, AZ 85044
                                         Telephone:  480.264.1400
                                         Facsimile:  480.248.3196
                                         Email:     david@gingraslaw.com

                                         *Attorneys for Defendants-Appellants Ethan*
                                         *Daniel Chumley and Atlantic Building*
                                         *Systems, LLC*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendants submit that this case presents complex and important issues and that the Court may be aided by oral argument. Defendants therefore respectfully request oral argument to have the opportunity to address any questions the Court may have with respect to this case.

By:  _s/ Craig R. May_
        Craig R. May

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because:

      This brief contains 12,989 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because:

      This brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 2010 in Times New Roman 14.

By:  *s/ Craig R. May*
          Craig R. May

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1)    all required privacy redactions have been made per 10th Cir. R. 25.5;

(2)    the hard copies submitted to the Tenth Circuit Court of Appeals are exact copies of the version being submitted electronically; and

(3)    the digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, Microsoft Forefront Version 4.6.305.0, last updated on November 9, 2015, and according to the program is free of viruses.

s/ *Craig R. May*

Craig R. May

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of **APPELLANT'S OPENING BRIEF** was served on those listed below via the Tenth Circuit Court of Appeals' electronic email system this 9th day of November, 2015, to the following:

**Shannon Wells Stevenson**
Shannon.stevenson@dgslaw.com, brigid.bungum@dgslaw.com

**Kyle W. Brenton**
kyle.brenton@dgslaw.com, judy.terranova@dgslaw.com

**Laura Adriana Alos**
laura.alos@wilsonelser.com

**Adam Ross Bialek**
adam.bialek@wilsonelser.com

**David Samuel Fein**
david.fein@embsgroup.com, adam.walczak@embsgroup.com

**Patrick Donald Frye**
patrick.f@embsgroup.com, adam.walczak@embsgroup.com

**David Scott Gingras**
david@gingraslaw.com, jane@gingraslaw.com

**Craig Ruvel May**
may@wtotrial.com, ganderson@wtotrial.com, shaw@wtotrial.com

**Henry L. Solano**
henry.solano@wilsonelser.com, laura.devico@wilsonelser.com

**Kenneth Edward Stalzer**
stalzer@wtotrial.com, purdy@wtotrial.com

*s/ Craig R. May*
Craig R. May

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Civil Action No. 14-cv-01932-REB-CBS

GENERAL STEEL DOMESTIC SALES, LLC, d/b/a
GENERAL STEEL CORPORATION, a Colorado limited liability company,

      Plaintiff,

v.

ETHAN DANIEL CHUMLEY, individually; and
ATLANTIC BUILDING SYSTEMS, LLC, a Delaware corporation, doing business as
ARMSTRONG STEEL CORPORATION,

      Defendants.

---

## ORDER CONCERNING MOTION FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

    The matter before me is the **Defendants' Motion for Summary Judgment**
[#106][1] filed April 17, 2015.  The plaintiff filed a response [#123], and the defendants
filed a reply [#129].  I grant the motion in part and deny it in part.

### I.  JURISDICTION

    I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question) and
§ 1332 (supplemental).

### II.  STANDARD OF REVIEW

    The purpose of a summary judgment motion is to assess whether trial is
necessary.  **White v. York Int'l Corp.**, 45 F.3d 357, 360 (10th Cir. 1995).  FED. R. CIV.

---

[1]   "[#106]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF). I use this
convention throughout this order.

P. 56 (a) provides that the court may grant summary judgment when "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **FED. R. CIV. P.  56(a);** *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994).  Summary judgment may be granted if the court concludes that no "rational trier of fact" could find for the nonmoving party based on the showing made in the motion and response.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal citation and quotation omitted).  Once such a motion has been supported properly, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994), *cert. denied*, 540 U.S. 1027 (1995).  In all summary judgment proceedings, the evidence in the record must be viewed in the light most favorable to the party opposing the motion.  *Simms v. Oklahoma ex rel Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 528 U.S. 815 (1999).

## III.  FACTS

This statement of facts is based on the evidence in the record viewed in the light most favorable to the plaintiff.  The plaintiff is  General Steel Domestic Sales, LLC, doing business as General Steel Corporation (General Steel).  Defendant, Ethan

Chumley, is the Chief Executive Officer of Atlantic Building Systems, LLC, which is also

a defendant. Atlantic Building Systems does business as Armstrong Steel Corporation

(Atlantic Building). Both companies sell pre-engineered steel buildings.

In its complaint, General Steel alleges that the defendants, Ethan Chumley and

Atlantic Building, make "it their practice to retaliate against General Steel through false

and misleading internet publications." *Complaint* [#49], ¶ 10. General Steel alleges that

the defendants use the internet to harm General Steel and derive business for

themselves. *Id.* General Steel contends the defendants run ads on internet search

engines which ads appear in response to searches for the words "General Steel,"

"General Steel Buildings," "steel buildings," and "metal buildings." *Id.*, ¶ 16. According

to General Steel, many of the ads run by the defendants contain derogatory information

about General Steel and contain links to a portion of the Armstrong Steel Corporation

website which also contains derogatory information about General Steel. General Steel

alleges that the internet search engine ads run by the defendants are false, misleading,

and defamatory. Based on the allegations in the complaint, General Steel asserts four

claims: (1) unfair competition and unfair trade practices under the Lanham Act, 15

U.S.C. § 1125(a)(1)(A); (2) libel and libel per se; (3) intentional interference with

prospective business advantage; and (4) civil conspiracy.

Twenty statements on the Armstrong Steel website are at issue. The statements

at issue are depicted in Exhibit A and Exhibit B [#106-2 & #106-3] to the motion for

summary judgment [#106]. Exhibit A depicts a portion of the Atlantic Building Systems

website titled Industry Related Legal Matters (IRLM Page). Mr. Chumley testifies that

he created that portion of the Atlantic Building Systems website in February 2014.

*Affidavit of Ethan Chumley* [#106-1] (Chumley Affidavit), ¶ 3. Exhibit A shows the IRLM

Page as it existed during April 2015.  *Id.*, ¶ 4.

With some exceptions, Exhibit A depicts the IRLM Page as it existed when it first was made part of the Atlantic Building Systems website.  *Id.*  In Exhibit A, posts on the IRLM Page are given numbers 1 through 37.  *Id.*, ¶ 5.  General Steel alleges that 20 of these posts support its claims in this case.  As numbered in Exhibit A, those posts are 1, 5, 6, 9, 11, 13, 14, 17, 20, 22, 23, 25, 26, 27, 29, 32, 33, 35, 36, & 37.

Exhibit B [#106-3] shows each of the 37 posts on the IRLM Page.  Each post includes a button labeled "Read More."  Exhibit B includes a link which leads to the information linked to the "Read More" button associated with each post on the IRLM page.  The "Read More" button links to third-party websites.  *Chumley Affidavit*, ¶ 15.  As shown on the IRLM Page, each statement on the IRLM Page contains an excerpt from the document which can be seen in full when the "Read More" button is pushed.

Post 1 on the IRLM Page is illustrative of the format used on the IRLM page.  The heading of post 1, a heading created by the defendants, reads: "Class Action Complaint - Heinbaugh et al v. General Steel Domestic Sales, LLC."   The first paragraph of post 1 is a quotation from courthousenews.com describing a class action lawsuit filed against General Steel.  This paragraph reads:

> U.S. District Court of Colorado - General Steel Corp. And its CEO Jeffrey Knight "infamous" telemarketers of steel-buildings, systematically defrauded their customers, in defiance of court orders, by, among other things, taking nonrefundable deposits and then refusing to deliver buildings for the price advertised, a class-action complaint claims in Federal Court.

When the reader presses the "Read More" button, the reader is linked to a page on courthousenews.com which omits the reference to "U.S. District Court of Colorado."  Instead, the courthousenews.com page headlines this entry with "**General Steel**

**Accused of Defying Court Order** - DENVER (CN) -" *Exhibit B*, p. 2 (emphasis in original).  Following this language, the courthousenews.com page contains all of the language in the indented paragraph above, except for  "U.S. District Court of Colorado." At the end of the paragraph on courthousenews.com a link to the full text of the class action complaint is provided.

The second paragraph of post 1 on the IRLM Page contains a two sentence quotation from the class action complaint.  The quotation from the complaint speaks of General Steel "supposedly" cleaning up its deceptive business practices but alleging that its "basic business plan remained focused on two overriding goals - obtain a 'non-refundable' deposit from customers and never actually deliver a steel building to any customer for the price set forth in the contract."  Exhibit B, p. 1.  Again, the "Read More" button leads to the courthousenews.com page which contains a link to the full text of the class action complaint.  Immediately below, I summarize more briefly some of the other posts on the IRLM Page at issue in this case.  I describe the heading of each post, any summary authored by the defendants, the quotation included in the post, and the nature of the link provided with the "Read More" button.  Again, the details of all of the posts on the IRLM Page can be seen in Exhibit A and Exhibit B.

- Post 5 - Heading: "Attorney General Madrid Warns New Mexico Churches About Colorado Metal Building Company."  Summary: In essence, the summary states that New Mexico Attorney General issued a consumer alert warning churches and other organizations concerning General Steel. Quotation: The quotation includes three sentences from a November 14, 2005, article in the Albuquerque Journal about the warning of the attorney general.  "Read More" link: The "Read More" link leads to the full text of

the Albuquerque Journal article.

- Post 6 - Heading: "General Steel Domestic Sales, LLC v. Chumley."
  Summary: The summary describes Mr. Chumley's history as a former
  employee of General Steel who left General Steel to work for a competing
  company and then formed Atlantic Building Systems.  The summary
  continues with a description of the claims and counterclaims in a case filed
  by General Steel against Mr. Chumley and Atlantic Building Systems in
  2010.  Quotation: Post 6 includes brief quotations from the counterclaims
  of Mr. Chumley and Atlantic Building Systems, with citations to the court
  record.   "Read More" link: The "Read More" link links to the full text of a
  court order addressing the General Steel's motion to dismiss certain
  counterclaims of Armstrong Steel and granting that motion as to some of
  the counterclaims of General Steel.  Dismissal of these counterclaims is
  not noted in the summary.

- Post 14 - Heading: "Rock Limo Service v. General Steel Domestic Sales.
  Summary: None.  Quotation: Post 14 includes quotations from a 2013
  order of the United States District Court for the Northern District of Illinois,
  Eastern Division.  The quotations describe a contract between the
  petitioners and General Steel and the deposits paid to General Steel by
  the petitioners.  The quotations end with this sentence: "Petitioners
  demanded return of their deposit, but General Steel refused to pay it."
  Exhibit B, p. 33.   "Read More" link: The "Read More" link leads to the full
  text of the court opinion quoted.

In the opinion quoted in post 14, the court reviewed the conclusions of an

arbitrator who entered an arbitration award in favor of General Steel and against the petitioners, Rock Limo Service and Nikola Akrap, and confirmed the award of the arbitrator. In essence, the opinion finds that the arbitrator found General Steel properly retained the deposit tendered to General Steel by Rock Limo Service. The arbitrator found it was the Rock Limo Service, and not General Steel, that breached the applicable contract. The court confirmed the award of the arbitrator and denied the motion of the petitioners to vacate the arbitration award.

The IRLM Page contains a general disclaimer. "These external hyperlinks represent allegations made by parties (which may or may not ultimately be adopted by a judge/jury) and findings of fact and law by judges/arbitrators. Some of the cases mentioned here may be ongoing, dismissed, settled and/or may not be final." Exhibit A, p. 1.

Also at issue are the internet search engine ads run by the defendants. According to General Steel, when General Steel customers, prospective customers, or others search Google and Yahoo/Bing using the words "General Steel" or "General Steel Buildings," ads paid for by the defendants appear in the search results. At some point, according to General Steel, the defendants paid for the ads to appear in response to internet searches for "steel buildings" and metal buildings." *Response* Exhibit 2 (Chumley Deposition), 215:16 - 216:1. The internet search engine ads contain the text shown below.

Advertisement One:

Don't Send Them A Deposit - ArmstrongSteelBuildings.com
Ad www.armstrongsteelbuildings.com/
Until You've Seen These Lawsuits. Read This Before It's Too Late!

Advertisement Two:

Before You Send a Deposit - Do Your Research First
Ad www.armstrongsteelbuildings.com/ (855) 882-6555
Read This Before It's Too Late!
View Gallery - Virtual Building - Design It Online - 1.800.345.4610

Advertisement Three:

Steel Building *Lawsuits* - ArmstrongSteelBuildings.com
www.armstrongsteelbuildings.com/ +1 800-345-4610
4.8 rating for armstrongsteelbuildings.com
Rock Limo Lost $125,383 in Deposits *Beware* Research Before You Buy!
Court Rulings · Lawsuits · Buyer Beware · Complaints

Advertisement Four:

Don't Send Them A Deposit - Until You've Seen These Lawsuits.
www.ArmstrongSteelBuildings.com
Until You've Seen These Lawsuits. Read This Before It's Too Late!

Advertisement Five:

Consumer ALERT! - Have You Seen These Customer Complaints?
www.ArmstrongSteelBuildings.com
Have You Seen These Customer Complaints? Read This Before Its Too Late!

Advertisement Six:

Read Customer *LAWSUITS*
www.armstrongsteelbuildings.com/ +1 800-345-4610
4.7 rating for armstrongsteelbuildings.com
"General Told Her 'We Will Keep You In Court Until We Break You'"
Court Rulings · Lawsuits · Buyer Beware · Complaints

*Final Pretrial* Order [#173], pp. 11 - 12; Complaint [#49], Exhibits 2, 3, 4, & 5 [#49-2,

#49-3, #49-4, #49-5]; *Response* [#123], Exhibit 8 [#123-3], pp. 8 - 14.

Addressing the IRLM Page, General Steel contends the defendants have

"collected old documents from long-resolved General Steel litigation and wholly created

a website conveying facts that are false as to General Steel's current operations.

*Response* [#123], p. 8.  In addition, General Steel argues the title fo the IRLM Page,

8

"Industry Related Legal Matters," is misleading because the page allegedly appears to be an objective site disclosing industry lawsuits, but actually is a page which targets General Steel for criticism. *Id.*, p. 9. Further, General Steel claims the paid ad content of the defendants, ads which appear in response to internet searches, is false and misleading. *Id.*

In their motion for summary judgment [#106], the defendants assert eight bases for dispositive relief. One, the defendants are immune from all claims based on provisions of the Communications Decency Act. Two, the statements at issue are protected by the fair reporting privilege. Three, some of the statements are non-actionable expressions of opinion. Four, the statements are true and, therefore, may not be a basis of liability. Five, the false advertising claim fails because none of the statements is literally false. Six, the plaintiff has not presented evidence of customer confusion to support the false advertising claim. Seven, the plaintiff cannot prove the elements of tortious interference with prospective business advantage. Eight, the plaintiff has not presented sufficient evidence to support its claim of civil conspiracy. I address each of these issues seriatim.

## IV. IMMUNITY UNDER THE COMMUNICATIONS DECENCY ACT

Title 47 U.S.C. § 230, part of the Communications Decency Act, creates an immunity to many causes of action that could otherwise hold a computer service provider liable for information originating with a third party. Section 230(c)(1) provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."

Section 230 sets three limitations on the immunity provided in that section. *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1196 (10th Cir. 2009). First, immunity is

available only to a "provider or user of an interactive computer service." *Id*.   In relevant part,

§ 230(f)(2) defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer service, including specifically a service or system that provides access to the Internet...."  Second, the liability must be based on the actions by the defendant as a "publisher or speaker." § 230(c)(1).  Third, immunity may be claimed only with respect to "information provided by another information content provider." *Accusearch*, 570 F.3d at 1196.  Section 230(f)(3) defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  If a defendant fails to qualify under any of the three qualifiers, the defendant is not entitled to § 230 immunity.

## A.  Immunity Limit - Information Content Provider

General Steel argues the defendants are not entitled to § 230 immunity because the defendants wholly or partially created or developed the information at issue.  As a result, General Steel asserts, the defendants are information content providers under § 230.  This argument relates to the third limitation on § 230 immunity noted above.

> A provider of an interactive computer service . . . may claim CDA immunity only with respect to "information provided by another information content provider." 47 U.S.C. § 230(c)(1). Thus, an interactive computer service that is also an "information content provider" of certain content is not immune from liability arising from publication of that content.

*Accusearch*, 570 F.3d at 1197.   As used in § 230(f)(3), a service provider is responsible for the creation or development of information, and thus becomes an information content provider as to that information,  if the service provider "in some way

specifically encourages development of what is offensive about the content."

*Accusearch*, 570 F.3d at 1199.  In this context, I read the use of the word "offensive" to mean unlawful or legally actionable.  The *Accusearch* court held that Accusearch was a content provider because it "solicited requests for confidential information protected by law, paid researchers to find it, knew that the researchers were likely to use improper methods, and charged customers who wished the [confidential] information to be disclosed."  *Id*. at 1201.

On the other hand, "[o]ne is not 'responsible' for the development of offensive content if one's conduct was neutral with respect to the offensiveness of the content (as would be the case with the typical Internet bulletin board)."  *Id. at 1199.*  For example, in *Ben Ezra*, America Online (AOL) posted on three occasions incorrect information about the stock price and share volume of a certain corporation.  *Ben Ezra*, 206 F.3d at 983.  AOL purchased the information from a third party vendor.  The court found that AOL did nothing to solicit the erroneous information.  *Id*. at 985.  Rather, AOL asked the third party vendor to correct errors.  *Id*.  As read by the *Accusearch* court, the *Ben Ezra* court held AOL was not an information content provider for purposes of § 230, because AOL "had done nothing to encourage what made the content offensive - its alleged inaccuracy.  America Online's conduct was neutral with respect to possible errors in the stock quotations.  It was therefore not responsible for the offensive content."  *Accusearch*, 570 F.3d  at 1199 - 1200.

Last year, the United States Court of Appeals for the Sixth Circuit reviewed decisions from sister circuits to determine a workable measure of the term "development of information," as that term is used in § 230(f)(3).  *Jones v. Dirty World Entertainment Recordings LLC*, 755 F.3d 398 (6th Cir. 2014).  The *Jones* case

concerned posting of defamatory content about the plaintiff on the Dirty World website by third party users of the website.  On some occasions, the operator of the website added short comments about certain posts, including some of the defamatory posts at issue.  Consistent with many sister circuits, the *Jones* court adopted "the material contribution test to determine whether a website operator is responsible, in whole or in part, for the creation or development of [allegedly tortious] information."  *Id*. at 413 (insertion of language in original; internal quotation omitted).

Reviewing several relevant decisions, the *Jones* court concluded that taking actions necessary to display content created or developed by another does not constitute development of information for the purpose of § 230(f)(3).  *Id*. at 414.  Inviting or encouraging third parties to post content does not constitute development.  *Id*.  When an operator of a website ratifies or adopts third party content, including through the posting of commentary by the website operator, the website operator does not develop the information.  *Id*. at 415.  Further, choosing to publish or not to publish third party content does not constitute development.  *Id*. at 415 - 416.  For the last proposition, the *Jones* court relied in part on *Zeran v. America Online, Inc*.  In *Zeran*, the United States Court of Appeals for the Fourth Circuit held that § 230 bars "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content . . . ."  129 F.3d 327, 330 (4th Cir. 1997).  Further, minor editing of content developed by third parties does not constitute development, as long as the changes do not contribute to the false, misleading, or otherwise unlawful nature of the underlying information.  *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC* , 521 F.3d 1157, 1170 (9th Cir. 2008).

General Steel notes that the posts at issue were not submitted to the IRLM Page by third parties.  Rather, they were created by Mr. Chumley from information he obtained from the internet.  Although many cases addressing § 230 immunity involve posts made on websites by third parties, nothing in § 230 or the relevant case law limits § 230 immunity to information submitted directly to a website by a third party.  However, it must be noted that some of the cases on which the *Jones* court relied distinguish between information provided to a website operator, but not intended for posting on the internet, and information provided to a website operator with an intention or expectation that the information will be posted on the internet.  *See, e.g., Batzel v. Smith*, 333 F.3d 1018, 1034 (9th Cir. 2003); *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC* , 521 F.3d 1157, 1170 (9th Cir. 2008).  Addressing this issue, the *Batzel* court held:

> a service provider or user is immune from liability under § 230(c)(1) when a third person or entity that created or developed the information in question furnished it to the provider or user under circumstances in which a reasonable person in the position of the service provider or user would conclude that the information was provided for publication on the Internet or other "interactive computer service."

*Batzel*, 333 F.3d at 1034.  In the present case, all of the quotations and links on the IRLM Page are information obtained from the internet and published by the defendants on their website on the internet.  When information is readily available on the internet and is obtained from the internet, it is reasonable to conclude that the information is provided for publication on the internet.

Addressing the statements at issue in the present case, the links to third party websites on the IRLM Page are within the purview of § 230 immunity because the information behind those links was created or developed by third party information

content providers.  The first paragraph of post 1 is within § 230 immunity because that paragraph is, with one inconsequential exception, a complete quotation of information on a third party website, couthousenews.com.

On the other hand, the six internet search ads developed by the defendants do not fall within the ken of § 230 immunity.  This is true because the defendants created and developed the content of those ads.

The § 230 immunity question is focused primarily on the posts created by the defendants on the IRLM Page which contain quotations from and summaries of the information provided in the links to third party websites.  The defendants argue they did not develop this information within the meaning of § 230, because the 20 posts in question accurately quote and summarize information and link to information developed by third parties and available on the internet.  Most of the posts on the IRLM Page contain a heading listing the parties to a lawsuit, sometimes a brief summary of the lawsuit, often a quotation or quotations from a document filed in the lawsuit, and a link to the full text of the document quoted.  Most of the documents quoted and summarized on the IRLM Page are court orders in the cases described on the page.  In the case of post 1, the document quoted is a class action complaint.  Posts 5 and 11 briefly summarize articles written about General Steel, quote those articles, and include a link to the full text of the articles on third-party websites.

In its response [#123], General Steel contends the defendants developed the content of the IRLM website in ways that are material in relation to the defendants' claim of immunity under § 230.  General Steel notes that Mr. Chumley created the IRLM web page and others may not and can not post information there.  In addition, General Steel argues that the complaints and orders quoted and linked on the IRLM Page would not

otherwise have been readily visible by internet users who search for "General Steel" or similar key words.  General Steel claims the excerpts on the IRLM Page highlight inflammatory and disparaging parts of "unproven Complaints and other pleadings in order to harm General Steel and steal its business."  *Response* [#123], p. 5.  Actually, the IRLM Page quotes and references only one complaint or other pleading.  However, at many points on the IRLM Page, the defendants summarize allegations made against General Steel by various plaintiffs, as those allegations were summarized by a court in an order.

Noting the less than neutral nature of the IRLM Page, General Steel notes that Mr. Chumley did not post a court order dated May 7, 2013, in which Mr. Chumley and Armstrong Steel were found liable for wilful and false advertising targeting General Steel.  Mr. Chumley's purchase of internet advertising which leads users to the IRLM Page shows, General Steel contends, that Mr. Chumley's conduct in developing the IRLM Page is not neutral.

General Steel does not claim that the links to the documents referenced on the IRLM Page lead a user to inaccurate versions of the documents referenced.  General Steel does not claim that the IRLM Page contains inaccurate quotations of the court orders, the class action complaint, and the two articles quoted there.  However, citing Exhibit 3 [#106-3] generally, General Steel contends some of the quotations on the IRLM Page include separate, non-consecutive portions of the document quoted.  In addition, General Steel notes, Mr. Chumley wrote the summary descriptions contained in some of the posts, and he chose the excerpts which are quoted in each post.  These tasks were done, Mr. Chumley says, using his own editorial judgment.

Based on the undisputed facts in the record and the law outlined above, I find

and conclude that, for the purpose of § 230 immunity, the defendants developed certain information shown on the IRLM Page.  To the extent the defendants chose certain summaries and quotations describing the referenced court proceedings, failed to accurately describe the proceedings as a whole, and posted those quotations and summaries on the IRLM Page, the defendants developed the information they posted on that page.  These editorial choices can be seen as a choice to emphasize unflattering allegations made against General Steel without summarizing or quoting information which reflects the nature and outcome of the court proceeding described. The claims of General Steel are founded on its contention that the defendants created an inaccurate image of General Steel by highlighting on the IRLM Page unflattering allegations against General Steel without also describing the context of those claims or how those claims were resolved.  Highlighting the unflattering allegations without providing other relevant information reasonably can be seen as contributing to the allegedly defamatory or otherwise actionable nature of the underlying information.  Such actions specifically encourage development of what is allegedly unlawful or legally actionable about the content and, thus, constitutes development of the information for the purpose of § 230 immunity.  *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1196 (10th Cir. 2009).

My conclusion could be seen to be contrary to the statement of the United States Court of Appeals for the Fourth Circuit that § 230 bars "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content . . . ."  *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).  However, I conclude that the United States Court of Appeals for the Ninth Circuit stated more accurately how editing

of content developed by third parties may or may not be development of information for the purpose of § 230 immunity.  "(M)inor editing of content developed by third parties does not constitute development, as long as the changes do not contribute to the false, misleading, or otherwise unlawful nature of the underlying information." *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC* , 521 F.3d 1157, 1170 (9th Cir. 2008).

Having reviewed all of the posts at issue, I find that the summaries and quotations used by the defendants in posts 5, 9, and 11 in the IRLM Page are reasonably accurate summaries of the underlying information developed by third parties.  As to these three posts, the undisputed facts in the record show the defendants did not develop the relevant information by highlighting unflattering allegations without providing other relevant information.  As to these three posts, the defendants are providers of an interactive computer service, the plaintiff seeks to impose liability on the defendants as publishers or speakers of the information on the IRLM Page, and the information in question was provided by other information content providers.  By organizing, quoting, and summarizing this information, the defendants did nothing to specifically encourage the development of what General Steel claims is unlawful or legally actionable about the underlying content.  As to these three posts, the defendants are entitled to § 230 immunity.  As noted previously, the first paragraph of post 1 also is within § 230 immunity.

On the other hand, as to all of the other posts, the second paragraph of post 1 and posts 6, 13, 14, 17, 20, 22, 23, 25, 26, 27, 29, 32, 33, 35, 36, 37, the evidence in the record shows the defendants specifically encouraged development of what is allegedly unlawful or legally actionable about the underlying content.  For the purpose of

§ 230 immunity, this constitutes development of the information.  A comparison of the summaries and quotations created by the defendants with the relevant underlying document indicates that the defendants developed this information by highlighting what is allegedly unlawful or legally actionable about the information.  As to these posts, the defendants are information content providers under § 230 who are not entitled to § 230 immunity.

### B.  Immunity As To Lanham Act Claim

Section 230(e)(2) provides a limit on § 230 immunity: "Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property." General Steel contends its Lanham Act claim is an intellectual property claim and, therefore, considerations of § 230 immunity is irrelevant.

The Lanham Act claim is brought under 15 U.S.C. § 1125(a)(1)(A).  That statute creates a cause of action for the use in commerce of any word, term, name, symbol, or false or misleading description or representation of fact which is likely to cause confusion or mistake as to the goods, services, or commercial activities of another person.  Section 1125 is part of subchapter III of chapter 22 of title 15 of the United States Code.  Generally, chapter 22 concerns trademarks.  Subchapter III of chapter 22 concerns proceedings involving trademarks.  Particularly given this context, a false advertising claim under § 1125 implicates trademark law, an ilk of intellectual property law.  The § 1125 claim of the plaintiff is an intellectual property claim.  Therefore, this claim does not fall within the ambit of § 230 immunity claimed by the defendants.

### C.  Conclusion

Immunity under § 230 is applicable to the links to third party websites on the IRLM Page.  The information behind those links was created or developed by third party

information content providers.  The defendants are entitled to § 230 immunity as to the first paragraph of post 1 and the summaries and quotations used by the defendants in posts 5, 9, and 11 on the IRLM Page.  However, the defendants are not entitled to § 230 immunity as to the summaries and quotations used by the defendants in all of the other IRLM Page posts at issue.  The immunity provided by § 230 does not apply to the Lanham Act claim under § 1125 or to any claim based on the six internet search ads created by the defendants.

## V.  FAIR REPORT PRIVILEGE

As to claims based on the posts on the IRLM Page involving the class action complaint and court orders, the defendants contend they are shielded by the fair report privilege.  The common law doctrine of fair report makes privileged a report of in-court proceedings if the report is fair and substantially correct.  *Quigley v. Rosenthal*, 327 F.3d 1044, 1062 (10th Cir. 2003) (citing  Restatement (Second) of Torts § 611).  The Colorado courts also apply the fair report privilege.  *Wilson v. Meyer*, 126 P.3d 276, 279 (Colo. App. 2005) (citing  Restatement (Second) of Torts § 611).  In **Wilson**, the court held that the fair report privilege was not limited to court proceedings, but is applicable also in other public proceedings.  *Id*. at 280.

Both the Tenth Circuit and the Colorado courts refer to § 611 of the Restatement (Second) of Torts when applying the fair report privilege.  Section 611 provides:

> The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

*Restatement (Second) of Torts* § 611 (1977).  Comment f to § 611 details the accuracy requirement.

The rule stated in this Section requires the report to be accurate. It is not necessary that it be exact in every immaterial detail or that it conform to that precision demanded in technical or scientific reporting. It is enough that it conveys to the persons who read it a substantially correct account of the proceedings.  Not only must the report be accurate, but it must be fair.  Even a report that is accurate so far as it goes may be so edited and deleted as to misrepresent the proceeding and thus be misleading. Thus, although it is unnecessary that the report be exhaustive and complete, it is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it, as for example a report of the discreditable testimony in a judicial proceeding and a failure to publish the exculpatory evidence, or the use of a defamatory headline in a newspaper report, qualification of which is found only in the text of the article. The reporter is not privileged under this Section to make additions of his own that would convey a defamatory impression, nor to impute corrupt motives to any one, nor to indict expressly or by innuendo the veracity or integrity of any of the parties.

It is not always necessary that the entire proceedings be reported at one time. However, when a newspaper publishes from day to day the report of a judicial proceeding, it may not, after reporting derogatory parts, fail to publish the further proceedings that tend to vindicate the person defamed. The fact that the report of one side of a trial is not as complete as that of the other side is a factor to be considered in determining whether the report, as a whole, is unfair.

***Restatement (Second) of Torts*** § 611, comment f (1977).

Applying these standards to the quotations and summaries posted by the defendants on the IRLM Page, I find and conclude that the fair report privilege is applicable to the quotations and summaries in posts 5 and 9 on the IRLM Page.  Post 5 is a report of an official action by the Attorney General of the State of New Mexico.  On the IRLM Page, the defendants provide a reasonably accurate summary of this action. Post 9 concerns the findings, conclusion, order, and judgment of a Colorado state court in a case brought against General Steel by the Colorado Attorney General.  On the IRLM Page, the defendants provide a reasonably accurate summary of this action. Using the language of § 611, this summary is a fair abridgement of the occurrence reported.

Essentially for the same reasons discussed concerning § 230 immunity, I find that the summaries and quotations provided by the defendant in posts 1, 6, 13, 14, 17, 20, 22, 23, 25, 26, 27, 29, 32, 33, 35, 36, 37 on the IRLM Page are not accurate and complete or a fair abridgement of the proceeding reported.  Therefore, the fair report privilege does not apply to the quotations and summaries created by the defendants and contained in these posts.

## VI.  EXPRESSIONS OF OPINION

The defendants contend the pure opinion doctrine precludes General Steel from making a claim based on expressions of opinion in the internet search ads of the defendants.  In the view of the defendants, its statements warning consumers to "look out" are non-actionable expressions of opinion.  An expression of harsh judgment with a link to source material is, in the view of the defendants, a statement of opinion and not fact.  The defendants claim that such statements of opinion are protected by the First Amendment.

The plaintiff contends the defendants have waived or forfeited a defense based on the First Amendment.  The defendants did not plead such a defense in their answer [#57].  No such defense is included in the Final Pretrial Order  [#173].  Given these circumstances, I conclude that the defendants have waived or forfeited a defense based on the First Amendment.[2]

---

[2]  "Waiver is accomplished by intent, but forfeiture comes about through neglect."  **See United States v. Zubia-Torres**, 550 F.3d 1202, 1205 (10th Cir.2008) (**quoting United States v. Carrasco-Salazar**, 494 F.3d 1270, 1272 (10th Cir.2007)).  **See also Richison v. Ernest Group, Inc.**, 634 F.3d 1123, 1128 (10th Cir. 2011).

## VII.  DEFENSE OF TRUTH

Addressing two of the internet search advertisements, the defendants contend the statements in those advertisements are true.  If so, the defendants argue, these statements may not be the basis for a claim of defamation, tortious interference with prospective business advantage, or violation of the Lanham Act.

Advertisement Three includes the statement "Rock Limo Lost $125,383 in Deposits."  The court opinion cited in post 14 on the IRLM Page states that Rock Limo and its operator, Nikola Akrap, breached their contract with General Steel "and General Steel was entitled to retain the $125,383.68 in deposits it had received."  ***Akrap v. General Steel Domestic Sales, LLC***, 2013 WL 6008928, at *4 (N.D. Ill. 2013).  Based on this opinion, the defendants contend the statement in Advertisement Three is true.

For the purpose of a defamation claim, a statement is defamatory if the statement tends to harm the reputation of a person by lowering the person in the estimation of at least a substantial and respectable minority of the community.  CJI-Civ. 4th 22:7.  However, truth is a defense to a claim of defamation.  Truth is proven when the defendant shows the statement is substantially true, meaning the substance or gist of the statement is true.  CJI-Civ. 4th 22:14.  General Steel contends this statement is false and defamatory because, as presented by the defendants, the statement clearly implies that General Steel wrongfully withheld the Rock Limo deposit when, in truth, General Steel properly withheld the deposit.  For the purpose of the claim of defamation, this divarication presents disputed issues of material fact for resolution by a jury.

To prove its Lanham Act claim as to Advertisement Three, General Steel must show, *inter alia*, that the defendants made false or misleading representations of fact in

their commercial advertising and that the representations are likely to influence a purchasing decision.  "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true, but likely to mislead or confuse consumers."  ***Southland Sod Farms v. Stover Seed Co.***, 108 F.3d 1134, 1139 (9th Cir.1997) (cited with approval in ***Zoller Laboratories, LLC. v. NBTY, Inc***., 111 Fed.Appx. 978, 982 (10th Cir. 2004)).  To prove its claim of tortious interference with prospective business advantage, General Steel must prove, *inter alia*, that the defendants used improper means to cause a third person not to enter into a contract with General Steel.  A false or misleading representation may constitute an improper means.  For the purposes of the claims under the Lanham Act and for tortious interference, the evidence outlined above presents disputed issues of material fact for resolution by a jury.

Advertisement Six includes the statement "General Told Her 'We Will Keep You In Court Until We Break You.'"  The court opinion cited in post 9 on the IRLM Page finds that a General Steel customer involved in a dispute with General Steel received a phone call from a General Steel representative.  The General Steel representative told the customer "we'll keep you in court until we break you."  *Motion* [#106], Exhibit B, Post 9, read more URL, p. 24.  The customer filed suit against General Steel, and the suit was settled when General Steel fully refunded the deposit to the customer.  *Id.*, pp. 24 - 25.  For the purposes of the claims of defamation, tortious interference, and violation of the Lanham Act, this evidence presents disputed issues of material fact for resolution by a jury.

## VIII.  LANHAM ACT - CUSTOMER CONFUSION

Addressing the Lanham Act claim, the defendants argue this claim fails because the plaintiffs have not presented evidence of customer confusion caused by the challenged statements.  When an advertisement is literally false, a Lanham Act claim may be established without evidence of consumer deception.  ***Scotts Co. v.. United Indus. Corp.***, 315 F.3d 264, 273 (4th Cir.2002).  When the statement at issue is literally true, but the plaintiff claims the statement is misleading, the plaintiff must present extrinsic evidence establishing that the challenged advertisement tends to mislead or confuse consumers.  ***Id***. at 272–73.  Confusion or deception is presumed, however, if either intent to deceive or literal falsity is shown.  ***Cashmere & Camel Hair Mfrs. Institute v. Saks Fifth Ave.***, 284 F.3d 302, 316 (1st Cir. 2002).

General Steel is relying on a theory of intentional deception in pursuing its claim under the Lanham Act.  *Response* [#123], p. 15.  The defendants do not seek summary judgment on the issue of intentional deception.  A claim under the Lanham Act based on a theory of intentional deception does not require proof of consumer confusion.  Thus, the defendants are not entitled to summary judgment on the Lanham Act claim based on the purported lack of evidence of consumer deception.

## IX.  TORTIOUS INTERFERENCE WITH<br>PROSPECTIVE BUSINESS ADVANTAGE

The defendants contend General Steel has not produced evidence to show that the defendants induced or otherwise caused a third party not to enter into a contract with General Steel.  General Steel relies on the reports of their two expert witnesses as supplying evidence that General Steel lost sales as a result of the actions of the defendants.  In addition, General Steel notes a statement by Johnathan Hochman, a

witness for the defense, in which Mr. Hochman conceded that General Steel probably

suffered a "(s)mall loss of sales" as a result of the advertising of the defendants.

*Response* [#123], Exhibit 1 (Hochman Deposition), 262:7 - 12.  This evidence is

sufficient evidence of the loss of one or more contracts caused by the actions of the

defendants to sustain the viability of the claim for trial.

## X.  CIVIL CONSPIRACY

According to the defendants, General Steel has not produced evidence of

underlying unlawful conduct necessary to support its civil conspiracy claim.  On the

current record, the evidence is sufficient to sustain for resolution at trial the claims for

false advertising, defamation, and intentional interference with prospective business

advantage.  That evidence is sufficient to support the unlawful conduct element of the

civil conspiracy claim.

## XI.  CONCLUSION & ORDERS

Concerning the state law claims, the defendants are entitled to immunity under

47 U.S.C. § 230 to the extent the state law claims are based on posts 5, 9, and 11 on

the IRLM Page.  Section 230 immunity also is applicable to the links to third party

websites on the IRLM Page.  On the other hand, the defendants are not entitled to

§ 230 immunity as to all of the other posts on the IRLM Page, the second paragraph of

post 1 and posts 6, 13, 14, 17, 20, 22, 23, 25, 26, 27, 29, 32, 33, 35, 36, 37,

The fair report privilege shields the defendants from all claims to the extent those

claims are based on posts 5 and 9 on the IRLM Page.  On the other hand, the fair report

privilege does not shield the defendants from claims based on the summaries and

quotations provided by the defendant in posts 1, 6, 13, 14, 17, 20, 22, 23, 25, 26, 27,

29, 32, 33, 35, 36, 37 on the IRLM Page.

On all other issues raised by the defendants in their motion for summary judgment, the defendants have not demonstrated a basis for the entry of summary judgment.

**THEREFORE, IT IS ORDERED** as follows:

1.  That under Fed. R. Civ. P. 56, the **Defendants' Motion for Summary Judgment** [#106] filed April 17, 2015, is granted to the extent the defendants seek a judgment holding that they are entitled to immunity under 47 U.S.C. § 230 as to the state law claims of the plaintiff to the extent those claims are based on the quotations and summaries in posts 5, 9, and 11 on the IRLM Page;

2.  That under Fed. R. Civ. P. 56, the **Defendants' Motion for Summary Judgment** [#106] filed April 17, 2015, is granted to the extent the defendants seek a judgment holding that the fair report privilege shields them from the claims of the plaintiff to the extent those claims are based on the quotations and summaries in posts 5 and 9 on the IRLM Page; and

3.  That otherwise, the **Defendants' Motion for Summary Judgment** [#106] filed April 17, 2015, is denied.

Dated August 18, 2015, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge